Edgar HARVEY *v.* STATE of Arkansas

CR 86-213                                              729 S.W.2d 406

Supreme Court of Arkansas
Opinion delivered May 26, 1987

*Henry J. Swift*, for appellant.

*Steve Clark*, Att'y Gen., by: *Robert A. Ginnaven, III*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. The appellant was convicted of two counts of first degree murder. His appeal presents three issues. First, he contends the statement he made to police officers should not have been admitted into evidence because he had once declined to make a statement. As we determine the statement to have been voluntarily made after waiver of his right to remain silent, we find no error. Second, he contends his tape recorded statement, which was made while he was in custody and which was partially inaudible, was inadmissible, and that a transcription of the tape recording should not have been admitted into evidence and given to the jury because it was inaccurate. We find no unfair prejudice resulting from admission of the recording or evidence to support the claim that the transcription was inaccurate. Third, the appellant contends it was error to permit introduction of gory pictures of the victims. We find the photographs were not so inflammatory as to prejudice the jury unfairly.

## 1. Voluntariness of statement

The appellant contended he killed the victims in self-defense. After having shot each of them with a shotgun, he called the police to report the killings. Upon his arrest the appellant was taken to the police station where, at 5:00 a.m. on December 25, 1985, he was warned of his rights and signed a waiver form but declined to make a statement. The following morning, at 9:10 a.m., two police officers who had not previously spoken with the

appellant interrogated him. One of the officers, Detective Sanders, testified that neither he nor the other officer at the second interrogation knew the appellant had earlier refused to make a statement. The appellant was again given the standard notification of his rights and warning that any statement he made might be used against him. He again waived his rights and signed a form to that effect. The appellant made the statement which was tape recorded and admitted into evidence.

The appellant contends his statement was not voluntary. At the trial he testified that he told the officers at the time the statement was made that he was not feeling well and that they should talk to him later. No such testimony was given by Detective Sanders who said the statement was made voluntarily by the appellant who not only signed the waiver of rights form but also said he understood his rights.

In *Hatley* v. *State*, 289 Ark. 130, 709 S.W.2d 812 (1986), we held that a resumption of police questioning of an incarcerated suspect by an officer to whom the suspect had not previously refused to speak was not necessarily a violation of the right to remain silent. We pointed out, after reviewing *Michigan* v. *Mosley*, 423 U.S. 98 (1975), and the difference between interrogation after a request for counsel and after refusing to make a statement, that as long as there is no evidence of coercion, a statement made voluntarily may be admissible against an accused who made it even though he once previously refused to make a statement.

A hearing was held by the trial court, at the request of the appellant, to determine the voluntariness of the statement. The only matter presented at the hearing by the appellant was his objection to the statement's admissibility "as a matter of law" on the ground of the previous refusal of the appellant to make a statement. When the court inquired whether he was contending he had been coerced to make the statement, the appellant's counsel responded that he could not "relate" to that as the appellant was unsure what had happened. He presented no evidence of coercion whatever at that hearing, and the judge found that the statement was voluntary.

Although we probably need not do so in this case, we will review the evidence as to the voluntariness of the confession

and come to an independent conclusion, as has been done in other cases where the voluntariness of the confession was at issue. *See Davis* v. *North Carolina*, 384 U.S. 737 (1966); *Cage* v. *State*, 285 Ark. 343, 686 S.W.2d 439 (1985). However, we do not reverse unless the trial court's determination of voluntariness is clearly erroneous. *Fleming* v. *State*, 284 Ark. 307, 681 S.W.2d 390 (1984). The factors we consider are set out in *Cessor* v. *State*, 282 Ark. 330, 668 S.W.2d 525 (1984).

The appellant testified he was forty years old and could read and write. Although his counsel intimated the appellant had no education there was no evidence of it one way or the other. He was twice advised of his rights and twice signed waiver forms. There is no evidence that he was held incommunicado for a long time or that he was repeatedly questioned in an attempt to wear him down. Nor does the record contain any other evidence of coercion or promise. The appellant stated to Detective Sanders that he understood his rights just prior to making the statement. He had been incarcerated just a little over twenty-four hours.

The record supports the trial court's finding that the statement was voluntary.

### 2. The recording and the transcript

The tape recording of the appellant's statement is inaudible in places. Detective Sanders testified that a transcript of the tape had been made, and that it reflected what was on the tape, but did not include the inaudible portions. The appellant objected to the admission into evidence of the recording on the basis of its partial inaudibility and to the transcript on the basis of its inaccuracy. The judge admitted both.

The appellant's argument on this point states simply that the inaudibility of the recording and the fact that the transcript has left out parts of the interview violate his right to due process of law accorded by the Fifth and Fourteenth Amendments to the United States Constitution. No such constitutional argument was made to the trial court, and thus we will not consider it here. *Chapin* v. *Stuckey*, 286 Ark. 359, 692 S.W.2d 609 (1985).

Nor do we find the admission of the transcript into evidence otherwise erroneous. The judge admonished the jury

that the transcription was to be used only as an aid in understanding the recording. By comparing the recording with the transcript, the jury could ascertain the instances where the person who made the transcript omitted the inaudible portions of the statement. While we have some reservations about the fact that some of what the appellant said in the interview was not recorded, it is not a matter of great concern, as the audible portions of the recorded statement are essentially consistent with the appellant's testimony at the trial and state he killed the victims in self-defense. The transcript was an accurate representation of the audible portion of the recording. If the transcript is accurate, it is admissible if it would otherwise be necessary to play the tape several times for the jurors. *Baysinger* v. *State*, 261 Ark. 605, 550 S.W.2d 445 (1977).

### 3. The photographs

Even if photographs are inflammatory in the sense that they show human gore repulsive to the jurors, they are admissible within the discretion of the trial judge if they help the jury understand the testimony. In this case a police officer testified that the photographs of the two victims at the scene of the crime fairly depicted the positions in which they were found. A medical examiner testified the autopsy pictures aided his testimony as to the condition of the bodies and their positions at the times the shots were fired. The judge did not abuse his discretion in admitting these photographs. *Fairchild* v. *State*, 284 Ark. 289, 293 S.W.2d 380 (1984).

In support of his argument on this point, the appellant cites *Berry* v. *State*, 290 Ark. 223, 718 S.W.2d 447 (1986), in which this court found too many photographs were introduced and thus the court's discretion had been abused. Here, the judge seemed to follow that decision to the letter by excluding pictures which were duplicative. We find no error.

Affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. The introduction of some of these photographs served absolutely no purpose other than to arouse the passion and prejudice of the jury. I do not understand how the colored photographs of the blood and of the

autopsy procedures assisted the jury in understanding the testimony of any witness or assisted any witness in presenting his testimony.

The facts of the case were not disputed, and there was never any need for much of an investigation. The appellant called the sheriff and reported that he had killed these two men. When the sheriff arrived at the scene of the crime, the appellant gave them the gun that he had used and explained how he had murdered the victims. Each was shot once in the chest by the appellant with a shotgun. The shots fired by the appellant killed the men instantaneously. If the photographs were of any assistance to the jury, which they were not, then the less gruesome photographs would have been adequate.

The majority misses the issue by stating that the trial court excluded pictures which were duplicative. I interpret this to mean that he excluded duplicate representations of the inflammatory photographs. The opinion fails to point out how the pictures aided the presentation of testimony to the jury or the jury's understanding of any relevant evidence.

In *Berry* v. *State*, 290 Ark. 223, 718 S.W.2d 447 (1986), we analyzed and re-examined our position relating to the introduction of inflammatory photographs and stated:

> The analysis should firmly emphasize the need for the trial court to carefully weigh the probative value of the photographs against their prejudicial nature, rather than promoting a general rule of admissibility which essentially allows automatic acceptance of all the photographs of the victim and the crime scene the prosecution can offer.

It appears that such reasoning is limited to the *Berry* case; the majority opinion in the present case certainly does not follow the same logic.

The courts should scrupulously honor the defendant's right to a fair trial. Unusually repulsive and gruesome pictures should not be used when their relevance is slight, and the prejudice is great. If there is no significant relevance to an issue, then the primary purpose for their introduction can only be to inflame and arouse the passions and prejudices of the jury.

Often bodies are moved or repositioned for the purpose of taking photographs for presentation to the jury. Two of the photographs in question are of such inflammatory nature that I believe a stranger could have been placed in the defendant's chair and the jury would have convicted him after viewing the pictures. One picture is worth a thousand words—especially if it is gruesome and gory.

When *Berry* was decided I had hoped that we were going to take a straightforward and practical approach in matters relating to the introduction of photographs in criminal cases. However, it appears that we are now back to our old rule which is essentially that introduction of photographs is not subject to review on appeal. Each such decision invites the state to present even more gruesome photographs in the next trial.

The danger of allowing the introduction of such photographs is that such evidence will be substituted for the direct proof required to establish that the accused committed the crime. Courts and prosecutors sometimes fail to recognize that pictures frequently present a false impression.

My fears are based upon statements by this Court such as were made in *Burnett* v. *State*, 287 Ark. 158, 697 S.W.2d 95 (1985), where the court stated: "In this case the photographs were obviously a strong part of the state's direct evidence, and we find no abuse of discretion by the trial court." Indeed they probably were—and will continue to be in the future. Hopefully, photographs will not become the chief record on appeal.

The introduction of the irrelevant and prejudicial photographs in this case was as senseless as was the crime. Truthfulness and fair play demand the exclusion of these morbid pictures.