Ronald Bernard WILSON *v.* STATE of Arkansas

CR 87-125                                    751 S.W.2d 734

Supreme Court of Arkansas
Opinion delivered June 6, 1988
[Supplemental Opinion on Rehearing July 11, 1988.]

*William R. Simpson, Jr.*, Public Defender; *Deborah R. Sallings*, Deputy Public Defender; *Arthur L. Allen*, Deputy Public Defender; and *Didi Harrison*, Deputy Public Defender, by: *William R. Simpson, Jr.*, Public Defender, and *Deborah R. Sallings*, of counsel, for appellant.

*Steve Clark*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. The appellant, Ronald Bernard Wilson, was convicted of nine felony counts including capital felony murder. All of the offenses occurred in a period of a few hours. He was given a variety of sentences in addition to death by lethal injection for the capital felony murder.

A woman was found dead in her home on July 18, 1987. Her employer had become concerned when she did not appear at her job, and her mother was notified. The decedent's mother found her in her bed. According to the medical examiner's testimony she had died of strangulation. A plastic telephone cord had been tied around her neck, and her hands and feet were bound. The medical examiner found a contusion on her tongue caused by a gag. He testified it would have taken from two to eight minutes for her to die of strangulation. There was evidence she had been raped. In a statement to the police, Wilson admitted going into the home of a woman on the evening of July 17, 1987, telling her to go to the bedroom, which he said she did without resistance, tying a plastic cord from her telephone around her neck, taking necklaces, a handgun, and her car and leaving the house.

Wilson also admitted that, in the early morning of July 18, he approached another victim who was outside a car in an apartment house parking lot. He used the handgun he had stolen to force her into the car he had stolen, drove her to another parking lot where he said she engaged in consensual sexual intercourse with him. This second victim testified that she was beaten into unconsciousness or semi-consciousness and came to while Wilson was attempting to effect intercourse with her on the hood of a car. She testified she was left naked in the parking lot and ran to a nearby building where she received help. She later underwent surgery for a blood clot on her brain which seriously threatened her life but from which she recovered.

In this appeal Wilson does not challenge any of the convictions or sentences other than the sentence to death. He contends Ark. Code Ann. § 5-4-604(8) (1987) is unconstitutionally vague and contains no guidelines to channel a jury's discretion in deciding whether an aggravating circumstance exists because the crime was "especially heinous, atrocious or cruel." He also argues that even if the statute is upheld, the evidence does not support the jury's finding that the murder of which he was convicted was

"especially heinous, atrocious or cruel." Finally, he contends the court erred in allowing the prosecutor to argue improperly in the sentencing phase of his trial.

■ We set aside the death sentence and reduce it to life without parole because we agree the statute is unconstitutional. As modified, the judgment will be affirmed unless, within seventeen days of this decision, the Attorney General of Arkansas moves for a new trial, in which case a new trial will be granted.

## 1. The statute

In *Furman* v. *Georgia*, 408 U.S. 238 (1972), the Supreme Court held that the death penalty was unconstitutionally exercised in two Georgia cases and one from Texas in violation of the Eighth and Fourteenth Amendments to the United States Constitution. Each Justice wrote an opinion. From the five opinions concurring in the result, it appears that the court's concern was that the death penalty was being applied arbitrarily because those empowered to impose the sentence had too much discretion, resulting in the wrong kind of selectivity, *i.e.*, selectivity based on factors such as race, sex, and economic status. Thereafter state legislatures enacted statutes which narrowed the sentencing discretion. In 1975, the Arkansas General Assembly enacted laws requiring the jury which convicts one accused of capital murder to hear additional evidence. If the jury unanimously concludes that aggravating circumstances exist beyond a reasonable doubt, that they outweigh mitigating circumstances beyond a reasonable doubt, and that the aggravating circumstances justify a death sentence, then the death sentence shall be imposed. *See* Ark. Code Ann. §§ 5-4-601 through 5-4-603 (1987 and Supp. 1987). Prior to 1985, seven specific aggravating circumstances which the jury could consider were specified in a statute, now codified as Ark. Code Ann. § 5-4-604(1) through (7) (1987). They are:

5-4-604 Aggravating circumstances.

Aggravating circumstances shall be limited to the following:

(1) The capital murder was committed by a person imprisoned as a result of a felony conviction;

(2) The capital murder was committed by a person unlawfully at liberty after being sentenced to imprisonment as a result of a felony conviction;

(3) The person previously committed another felony, an element of which was the use or threat of violence to another person or the creation of a substantial risk of death or serious physical injury to another person;

(4) The person in the commission of the capital murder knowingly created a great risk of death to a person other than the victim;

(5) The capital murder was committed for the purpose of avoiding or preventing an arrest or effecting an escape from custody;

(6) The capital murder was committed for pecuniary gain; or

(7) The capital murder was committed for the purpose of disrupting or hindering the lawful exercise of any government or political function.

In 1985, an eighth aggravating circumstance was added as § 5-4-604(8). It permits the jury to consider whether "[t]he capital murder was committed in an especially heinous, atrocious, or cruel manner."

The jury in this case found the aggravating circumstances stated in § 5-4-604(3) and (8). Against these, it balanced its finding of mitigating circumstances which were that Wilson committed the murder while his ability to conform his conduct to the law and to appreciate the wrongfulness of his conduct was impaired by mental disease or defect, and he had demonstrated the ability to adjust to penal institutions and contribute to society though incarcerated.

The jury concluded that the aggravating circumstances outweighed the mitigating circumstances and justified a death sentence beyond a reasonable doubt. The question presented is whether, by permitting consideration of whether the murder was "especially heinous, atrocious, or cruel," and allowing a death sentence to be based upon that determination, the general assembly has taken us back to the way the law was before 1975

and permitted standardless death sentencing.

In *Proffitt* v. *Florida*, 428 U.S. 242 (1976), the Supreme Court considered a case in which the same language as appears in our § 5-4-604(8) was used as an aggravating circumstance to justify a death sentence. The Supreme Court was apparently unwilling to say the language of the Florida statute passed constitutional muster. Rather, the court looked to the manner in which the language had been interpreted by the Supreme Court of Florida and said:

> That court has recognized that while it is arguable "that all killings are atrocious, . . . [s]till, we believe that the Legislature intended something 'especially' heinous, atrocious or cruel when it authorized the death penalty for first degree murder." As a consequence, the court has indicated that the eighth statutory provision is directed only at "the conscienceless or pitiless crime which is unnecessarily torturous to the victim." We cannot say that the provision, as so construed, provides inadequate guidance to those charged with the duty of recommending or imposing sentences in capital cases. [428 U.S. at 255-256, citations omitted]

In *Gregg* v. *Georgia*, 428 U.S. 153 (1976), the Supreme Court reached a similar decision with respect to language of a Georgia aggravating circumstance statute, relying not on the language of the statute to give guidance to the sentencer, but upon the gloss to be added by the Georgia courts. The Georgia statute provided as an aggravating circumstance that the murder was "outrageously wanton and vile, horrible and inhuman." The Supreme Court upheld the imposition of the death sentence, stating that it had no reason to fear that the Georgia Supreme Court would give the words an "open-ended" meaning. However, in *Godfrey* v. *Georgia*, 446 U.S. 420 (1980), apparently the Georgia Supreme Court did just that and approved a death sentence upon finding that it was "outrageously wanton and vile, horrible and inhuman" without further explanation, and the Supreme Court reversed. In doing so, the Supreme Court said:

> In the case before us, the Georgia Supreme Court has affirmed a sentence of death based upon no more than a finding that the offense was "outrageously or wantonly

vile, horrible and inhuman." There is nothing in these few words, standing alone, that implies any inherent restraint on the arbitrary and capricious infliction of the death sentence. A person of ordinary sensibility could fairly characterize almost every murder as "outrageously or wantonly vile, horrible and inhuman." Such a view may, in fact, have been one to which the members of the jury in this case subscribed. If so, their preconceptions were not dispelled by the trial judge's sentencing instructions. These gave the jury no guidance concerning the meaning of any of § (b)(7)'s terms. In fact, the jury's interpretation of § (b)(7) can only be the subject of sheer speculation.

The standardless and unchanneled imposition of death sentences in the uncontrolled discretion of a basically uninstructed jury in this case was in no way cured by the affirmance of those sentences by the Georgia Supreme Court. Under state law that court may not affirm a judgment of death until it has independently assessed the evidence of record and determined that such evidence supports the trial judge's or jury's finding of an aggravating circumstance. Ga. Code § 27-2537(c)(2) (1978). [446 U.S. at 428-429]

We could, in the case before us now, adopt language to describe what we may think the general assembly meant when it adopted § 5-4-604(8), and perhaps that would satisfy the Supreme Court that we, like the Florida Supreme Court, will so construe the words, "especially heinous, atrocious, and cruel," as to make them meaningful to a jury in its deliberation. Perhaps we could dwell on the conscious feelings of the victim of the crime as it was being perpetrated. We might also refer to the common revulsion felt by any person when confronted by the thought of strangulation, which was the method of death in this case. Or, we might look to the perpetrator and consider whether he was engaged in a rampage, as in this case, or only committed the one crime of murder. There are any number of circumstances to which we might refer in determining what "especially heinous, atrocious, or cruel" means. That is part of the problem. If we begin to adjudicate this issue in each case at this level we are likely to wind up displaying the very sort of inconsistency the Constitution requires us to avoid, as did the Oklahoma Court of Criminal

Appeals. In *Cartwright v. Maynard*, 822 F.2d 1477 (10th Cir. 1987), the Oklahoma court's attempts to give meaning to these same words were reviewed and found woefully various. It was held that there must be some objective standard, otherwise "the meaning that the sentencer attache[s] to this provision 'can only be the subject of sheer speculation,' " [822 F.2d at 1486, quoting *Godfrey v. Georgia, supra*, at 429].

The words "especially heinous, atrocious or cruel" can mean nearly anything. The jury in this case received no guidance whatever in defining them, and for us to give them meaning now would not only be after the fact of the sentencing in this case, but would constitute raw legislation. Even though the Supreme Court might approve this death sentence on the basis of our showing that we intend to interpret the statutory language so that it will mean something beyond the words used, we are unwilling to supplant the general assembly.

The Supreme Court has transformed the supreme courts of Georgia and Florida into legislative bodies by refusing to approve the broad language of the Georgia and Florida statutes without the limiting words added by case interpretation and simultaneously declining to disapprove the language as too vague or overbroad. The Arkansas constitution provides for three separate branches of government: legislative, executive, and judicial. While we usually have no hesitancy in interpreting the words of plain meaning used by our legislature, we must decline the invitation of the Supreme Court to bald intervention, especially when we have no better idea than the jury in this case could have had as to the meaning of the words used by § 5-4-604(8).

In Rosen, *The "Especially Heinous" Aggravating Circumstance in Capital Cases—The Standardless Standard*, 64 N.C.L. Rev. 941 (1986), it is reported that of the 37 states approving capital punishment, 24 have an aggravated circumstance provision similar to the one being considered here. Eight states have statutes with the same language as our statute. The author reviews the decisions made pursuant to those provisions and convincingly demonstrates that they provide no guidance whatever to the sentencer, as the cases show that virtually any consideration may fall within such broad language.

Unlike the Mississippi Supreme Court, *see Washington* v.

*State,* 361 So. 2d 61 (Miss. 1978), *cert. denied,* 441 U.S. 916 (1979), we are unwilling to say that jurors will know it when they see it when considering the "especially heinous" standard. The Mississippi Supreme Court takes the matter full circle. It cites *Gregg* v. *Georgia, supra,* in which the Supreme Court expressed its confidence in the Georgia Supreme Court's interpretation of Georgia's broad and vague aggravating circumstance statute and quotes language from that opinion approving generally the concept of jury sentencing in death penalty cases. The Mississippi court then expresses its confidence that jurors will know the meaning of the words of the statute.

We have no idea why the Supreme Court denied certiorari in *Washington* v. *State, supra,* but we cannot reconcile that decision with *Furman* v. *Georgia, supra,* or with *Godfrey* v. *Georgia, supra.* It is not even consistent with *Proffitt* v. *Florida, supra,* or *Gregg* v. *Georgia, supra,* as it does not meet the requirements of those cases that the broad, vague statutory language be narrowed and clarified by appellate judicial decision.

■ This court has committed itself to comparative review of death sentence cases to assure evenhandedness in the application of the death penalty in this state. *See Collins* v. *State,* 261 Ark. 195, 548 S.W.2d 106 (1977), and *Collins* v. *State,* 280 Ark. 312, 657 S.W.2d 546 (1983), concurring opinion of Hickman, J., 280 Ark. at 316, (not found in S.W.2d). That review must occur after a properly instructed jury has made its decision to apply the death penalty based upon instructions it can understand which are, in turn, based upon laws which circumscribe the jurors' death sentencing discretion. If the law limiting the death penalty to cases in which the jury finds, based upon sufficient evidence, that aggravating circumstances exist, that they outweigh mitigating circumstances, and that they compose a sufficient basis to apply the death penalty, then perhaps our comparative review of death sentences will result in no reversals whatsoever. Before that can occur, however, the jurors must, in the words of *Godfrey* v. *Georgia, supra,* have their "preconceptions . . . dispelled by the trial judge's sentencing instructions."

As we are holding § 5-4-604(8) to be too broad and vague to be sustained under the Eighth and Fourteenth Amendments to the United States Constitution, we need not consider the other

points raised by Wilson except as they may be relevant in the event there is a new trial. His argument with respect to whether his conduct could be described as fitting the statute becomes moot.

### 2. Improper argument

■ In his closing argument in the sentencing phase of the trial, the prosecutor asked the jurors to impose the death penalty and to "tell Ron Wilson he will never commit another murder." The court's ruling refusing to "do anything" about the remark was discretionary, and in the absence of an abuse of discretion, will not be reversed. *Hill* v. *State*, 289 Ark. 387, 713 S.W.2d 233 (1986). We find no abuse of discretion. The request was made in the context of urging the jurors to act as a group in imposing the sentence. In context, it did not suggest that there was evidence from which it could be determined that Wilson would kill again. We find no abuse of discretion.

The sentence to death by lethal injection is set aside and reduced to a sentence to life imprisonment without parole. However, if the Attorney General of Arkansas petitions for a new trial within seventeen days from this decision, a new trial will be granted.

HOLT, C.J., HICKMAN, and GLAZE, JJ., dissent.

HAYS, J., concurs.

STEELE HAYS, Justice, concurring. I concur in the reduction of the sentence, conditioned on the right of the State to retry the appellant, on the grounds that Ark. Code Ann. § 5-4-604(8) (1987) is unconstitutionally vague and overbroad as applied in this case.

JACK HOLT, JR., Chief Justice, dissenting. I respectfully disagree with the majority and would affirm Ronald Bernard Wilson's conviction and the sentence of death.

The majority acknowledges that in *Proffitt* v. *Florida*, 428 U.S. 242 (1976), the Supreme Court considered a case in which the same language that appears in Ark. Code Ann. § 5-4-604(8) (1987) was used as an aggravating circumstance to justify the death sentence. However, the majority then states that the Supreme Court was apparently unwilling to say that the language

of the Florida statute passed constitutional muster. To the contrary, the Supreme Court approved the Florida statute as interpreted by the Supreme Court of Florida. In *Proffitt, supra*, the Supreme Court concluded: "We cannot say that the provision, as so construed, provides inadequate guidance to those charged with the duty of recommending or imposing sentences in capital cases." We, in Arkansas, have the same latitude as the Florida courts to interpret and construe our own statute.

The Supreme Court has approved the language of a statute identical to ours. We have a duty and a responsibility to support its ruling and to uphold our statute as noted in Associate Justice Hickman's dissent.

DARRELL HICKMAN, Justice, dissenting. The first duty and responsibility of this court is to uphold our statute, if possible. *See Phillips* v. *Giddlings*, 278 Ark. 368, 646 S.W.2d 1 (1983); *State* v. *Ruiz*, 269 Ark. 331, 602 S.W.2d 625 (1980). Rather than do that, the majority has instead chosen to be critical of the way the United States Supreme Court has dealt with the question. The majority has not even tried to uphold the constitutionality of the statute, because if it had, it would find ample authority to do so.

The United States Supreme Court has held the exact language in our statute to be constitutional, and there was no equivocation by the court in its decision. *See Proffitt* v. *Florida*, 428 U.S. 242 (1976). The Supreme Court of Florida used the following language to describe the heinous crime: "the conscienceless or pitiless crime which is unnecessarily torturous to the victim." *See Proffit* v. *Florida, supra; Alford* v. *State*, 307 So. 2d 433 (Fla. 1975).

Since that definition or standard has been approved by the Supreme Court of the United States, it simply makes good sense for us to adopt it as our standard. Just as we compare death sentences on appeal, we could apply this standard to each case in which the jury finds the aggravating circumstance in question to exist. *See Collins* v. *State*, 261 Ark. 195, 548 S.W.2d 106 (1977). Mississippi easily found that its juries could understand what an especially heinous crime is, and I have no doubt that Arkansas juries can also decide if a crime is especially heinous, atrocious, or cruel. *See Washington* v. *State*, 361 So. 2d 61 (Miss. 1978), *cert. denied*, 441 U.S. 916 (1979).

The majority says if it attempts to do its duty, it might end up like the Oklahoma court with inconsistent decisions. The majority also engages in a good deal of intellectual wool gathering and has created an intellectual legal fog where none exists. The fact is that the majority's decision is without precedent and contrary to every decision every court has made regarding the question, which is: can the phrase "especially heinous, atrocious, or cruel" be understood and applied by jurors, and applied according to some acceptable standard by the courts? The answer in every case thus far has been yes. The majority's decision seems to be based on a law review article, a federal appeals court decision saying Oklahoma will not do what it said it would do, and a refusal to face the fact that the United States Supreme Court has said this language is not unconstitutionally vague.

The law cannot always be tied into a neat package for display in the parlor of nice people; sometimes it has raw edges. Our duty is to take it as we find it, not as we would like it to be. We should remember we are an appellate court, not a debating society. This is not a matter of what this court cannot do, it is what this court will not do, which I respectfully submit is its duty.

Regarding the crime committed by Wilson in this case, it was undoubtedly especially heinous, atrocious and cruel. Wilson casually strangled his victim after he raped her. She did not die instantly but lived for several minutes. Her suffering had to be immeasurable with her brain exploding in fear, terror, and pain; her last moments were cruel beyond comparison. It was by any measure a pitiless crime and the victim was unnecessarily tortured. Within hours, Wilson sought out another victim, beat her senseless and raped her.

Ronald Wilson received a fair trial and was sentenced to die under laws that are constitutional. By all rights he should pay the penalty the law requires.

I would affirm his conviction and the sentence of death.

GLAZE, J., joins in the dissent.

## SUPPLEMENTAL OPINION ON REHEARING
### JULY 11, 1988

752 S.W.2d 762

*William R. Simpson, Jr.*, Public Defender, by: *Thomas B. Devine III*, for appellant.

*Steve Clark*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. The state has asked whether our decision to vacate the death sentence unless a new trial were sought within seventeen days meant a request for a full new trial or a resentencing only. Our opinion contemplated a request by the state to be made in this court for a full new trial. However, in its petition the state has called to our attention the provisions of Ark. Code Ann. § 5-4-616 (1987) which permit this court to remand to the trial court when a death sentence is vacated solely on the ground of error in the sentencing proceeding. The statute provides, in pertinent part:

> Notwithstanding § 5-4-602(3), which requires that the same jury sit in the sentencing phase of a capital murder trial, the following shall apply:
>
> (1) Upon any appeal by the defendant where the sentence is of death, the appellate court, if it finds prejudicial error in the sentencing proceeding only, may set aside the sentence of death and remand the case to the trial court in the jurisdiction in which the defendant was originally sentenced. No error in the sentencing proceeding shall result in the reversal of the conviction for a capital felony. When a capital case is remanded after vacation of a death sentence, the prosecutor may:

(A) Move the trial court to impose a sentence of life without parole, and the trial court may impose such sentence without a hearing;

(B) Move the trial court to impanel a new sentencing jury.

■ As we found no error other than in the sentencing phase of the trial, it is appropriate to follow the statute. We therefore modify the mandate of our opinion as follows: The sentence of death is vacated, and the case is remanded to the trial court.