Alan WILLETT *v.* STATE of Arkansas

CR 94-322 911 S.W.2d 937

Supreme Court of Arkansas
Opinion delivered December 4, 1995

*William M. Pearson*, Johnson County Public Defender, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Deputy Att'y Gen., Senior Appellate Advocate, for appellee.

DONALD L. CORBIN, Justice. Appellant, Alan Willett, appeals the judgment of the Johnson County Circuit Court convicting him of two counts of capital murder and two counts of attempted capital murder. Appellant was tried by a jury and received two sentences of death by lethal injection and two sentences of thirty years in prison, all of which were to run consecutively. Jurisdiction is properly in this court pursuant to Ark. Sup. Ct. R. 1-2(a)(2). Appellant asserts nine points for reversal. We affirm the judgments of conviction for capital murder, but hold there was reversible error in the penalty phase of the bifurcated trial and remand to the trial court for resentencing pursuant to Ark. Code Ann. § 5-4-616 (Repl. 1993).

Appellant does not challenge the sufficiency of the evidence, so there is no need to recite the evidence in detail. All charges against appellant were the result of a single incident occurring at approximately 5:00 a.m. on September 14, 1993, when, apparently in anticipation of the possibility that his three minor children and mentally handicapped adult brother would be removed from his custody by the Department of Human Services, appellant attempted to kill them and himself in their home. Appellant beat the heads of his children and brother with an eight-pound iron window weight, and cut his own wrists and neck with a sharp object. Appellant succeeded in killing his thirteen-year-old son, Eric, and his brother, Roger Willett. Appellant's then seventeen-year-old daughter, Ruby, and then six-year-old son, Johnny, survived their injuries when Ruby escaped appellant's attention, grabbed Johnny, and went to a neighbor, who was an auxiliary deputy, for help. The neighbor, Donald Bradley, and a Johnson County Sheriff's Deputy, Robert Thompson, found appellant at the crime scene. Appellant was hospitalized thereafter, where he confessed to the murders and attempted murders.

Of his nine points for reversal, four are based on alleged errors that occurred during the guilt phase of the trial, two are based on alleged errors in the penalty phase, and three are constitutional challenges to our death penalty statutes. We address the four points pertaining to the guilt phase first.

Appellant's first assignment of error in the guilt phase is the admission of his confession. Appellant contends his uncounseled video-taped confession should not have been admitted into

evidence because he gave it after he had invoked his right to counsel. The trial court held a hearing on appellant's motion to suppress the confession and later denied the motion, ruling that appellant had been advised of his rights and the confession was voluntary. At trial, the state introduced appellant's confession into evidence during the testimony of Dan Short of the Arkansas State Police Criminal Investigation Division.

■ This court has previously stated that, after invoking the right to remain silent or the right to counsel, an accused in custody may change his mind, initiate further communication with law enforcement officials and waive those rights. *Bussard* v. *State*, 295 Ark. 72, 747 S.W.2d 71 (1988) (citing *Edwards* v. *Arizona*, 451 U.S. 477 (1981) and *Michigan* v. *Jackson*, 475 U.S. 625 (1986)); *Coble* v. *State*, 274 Ark. 134, 624 S.W.2d 421, *cert. denied*, 456 U.S. 1008 (1981). The admissibility of statements obtained after a person in custody has requested an attorney or decided to remain silent depends upon whether the accused knowingly and intelligently waived the right or rights he had invoked, whether his right to cut off questioning was scrupulously honored, and whether it is the accused who initiates the further communications with law enforcement officials. *Id.* On appeal, we determine whether such initiation and waiver has occurred from the totality of the circumstances, viewing the evidence in the light most favorable to the state. *Rockett* v. *State*, 318 Ark. 831, 890 S.W.2d 235 (1994). We will not reverse the trial court's determination unless it is clearly erroneous. *Id.*

There is no doubt appellant invoked his right to counsel while in police custody at approximately 10:00 a.m. on September 15, 1993 when Johnson County Sheriff Charles Nicklas and Investigator Short visited appellant in the hospital. Both law enforcement officials testified at the suppression hearing that they advised appellant of his *Miranda* rights, and that when they presented appellant with a waiver of rights form for his signature, appellant wrote on the signature line, "I want a lawer [sic] first." Both officials testified they did not ask any further questions of appellant.

Appellant does not dispute that, on the following day, September 16, he gave the prosecuting attorney's business card to a nurse and asked her to call the prosecuting attorney. The nurse,

Sue McCarley, testified at the hearing that she could not reach the prosecutor and upon informing appellant of such, he asked to speak with a deputy. Nurse McCarley stated appellant knew what he was doing when he asked her to contact the authorities.

Sheriff Nicklas and Investigator Short both testified that they, together with the prosecutor, returned to appellant's hospital room on September 16. At that time, appellant signed a written waiver of his rights to remain silent and to counsel. He also signed a written statement acknowledging that he asked the hospital to contact the law enforcement officials, that he initiated the contact with the officials, that he desired to give a statement to them, and that his decision to do so was voluntary. Investigator Short then video-taped appellant's confession, wherein appellant admitted striking all four victims in their heads with the window weight and intended to kill them and himself.

John Anderson, a licensed psychologist from the Division of Mental Health Services, testified at the suppression hearing that he had examined appellant and watched the video-taped confession. He opined that appellant was of average intelligence and that he saw nothing to indicate appellant acted in any way other than voluntarily when he confessed.

■ Viewing the foregoing evidence in the light most favorable to the state, it is clear that appellant initiated the contact with law enforcement officials by asking the nurse to call them. It is equally clear that he subsequently and voluntarily waived his rights and gave a confession. He signed the waiver form and, as the trial court observed, his actions and answers to questions indicated that he was acting voluntarily. Considering the totality of the circumstances, we cannot say the trial court's ruling admitting the confession into evidence is clearly erroneous.

■ On appeal, appellant also cites *Metcalf* v. *State*, 284 Ark. 223, 681 S.W.2d 344 (1984), and contends the impetus of his contact with police on September 16 was the prosecutor's action in leaving his business card with appellant. This argument, together with the argument that appellant was denied his right to counsel during an appearance that was conducted by the municipal judge in appellant's hospital room on the evening of September 15, were not raised below. We do not address arguments raised for the first time on appeal. *Greene* v. *State*, 317 Ark. 350,

878 S.W.2d 384 (1994). Even constitutional arguments are waived on appeal when not raised below. *Kittler* v. *State*, 304 Ark. 344, 802 S.W.2d 925 (1991).

Appellant's second and third assignments of error in the guilt phase are the admission into evidence of four photographs taken at the crime scene and during the two autopsies. He argues the photographs were cumulative of other photographs and highly prejudicial.

■ Even if photographs are inflammatory or prejudicial in the sense that they show human gore repulsive to the jurors, they are nevertheless admissible within the trial court's discretion if they help the jury understand the accompanying testimony. *Harvey* v. *State*, 292 Ark. 267, 729 S.W.2d 406 (1987). If a photograph serves no valid purpose and only inflames the jury, it is inadmissible. *Gruzen* v. *State*, 267 Ark. 380, 591 S.W.2d 342 (1979), *cert. denied*, 449 U.S. 852 (1980). However, the mere fact that a photograph is inflammatory or cumulative is not, standing alone, sufficient reason to exclude it. *Weger* v. *State*, 315 Ark. 555, 869 S.W.2d 688 (1994).

Specifically, appellant challenges the admission of State's Exhibits 4, 57, 60 and 63. State's Exhibit 4 is taken from the rear view and shows the body of Eric Willett lying in a large pool of blood on the floor of the Willett residence. Appellant objected on the basis that the photograph was cumulative of State's Exhibits 1 and 2. State's Exhibit 1 is a close-up photograph of Eric's body taken from the front view. State's Exhibit 2 is a photograph of the window weight lying on the floor in close proximity to Eric's head. State's Exhibit 4 was admitted as Deputy Thompson testified to what he saw as he entered the Willett residence and proceeded down the hall. Deputy Thompson stated he stepped over Eric's body, proceeded down the hallway, and found Roger lying in the hallway moaning and kicking. Later, according to Deputy Thompson, he went down the hallway again to bring appellant out of the bathroom where he remained behind a closed door. The trial court ruled State's Exhibit 4 would be admitted because, unlike State's Exhibits 1 and 2, it showed the hallway of the residence. We conclude that State's Exhibit 4 helped the jury understand Deputy Thompson's testimony of the crime scene and that it had probative value that was not cumulative of other pho-

tographs. Thus, although the photograph was gruesome, we find no abuse of discretion in admitting it.

State's Exhibits 57 and 60 are autopsy photographs of Roger's head showing the top and rear views, respectively. The two challenged photographs showed that Roger was struck on the back and side of the head numerous times. Other autopsy photographs of Roger's head injuries were also admitted. However, there is no duplication. State's Exhibits 57 and 60 served to help the jury understand the nature and extent of the fatal wounds and the medical examiner's testimony that Roger suffered five blows to the head. Exhibit 60 also showed the secondary injuries, bruises on the back of the head, caused from the primary blows to the head. We cannot say the trial court abused its discretion in this regard.

State's Exhibit 63, an autopsy photograph of Eric taken from the front view after the body was cleaned of dried blood, clearly shows injuries to Eric's eye and shoulder. Other autopsy photographs of Eric that were admitted show the fatal blows to the back of the head, but they did not show clearly the injuries to the eye and shoulder because the body had not yet been cleaned of blood. Thus, Exhibit 63 was helpful to understand the testimony that Eric suffered blunt-force injuries to the front of his head and elsewhere on his body in addition to the two fatal blows to the back of his head. Therefore, we find no abuse of discretion in admitting State's Exhibit 63.

This court stated in Weger that a gruesome photograph is admissible if, among other possibilities, it helps prove a necessary element of the case. To obtain the two convictions for capital murder, the state bore the burden of proving that appellant murdered Eric "[u]nder circumstances manifesting extreme indifference to the value of human life" and that he murdered Roger "[w]ith the premeditated and deliberated purpose" of causing his death. Ark. Code Ann. § 5-10-101(a)(4), (a)(9) (Repl. 1993). All four of the challenged photographs were probative of the foregoing elements. In addition, they specifically refuted that part of appellant's confession that he did not want his victims to suffer.

Appellant's fourth assignment of error in the guilt phase is the trial court's ruling that certain portions of appellant's con-

fession be excised before admission into evidence. The trial court granted the state's motion in limine and, because appellant was not claiming the defense of mental disease or defect, excluded the following statements from appellant's confession:

[I] feel like I wasn't sane at the time. . . .

 . . . .

[B]eing sane or insane . . . .

 . . . .

[I] was so insane . . . .

 . . . .

[I] do believe I wasn't sane that night, and I believe I wasn't sane . . . .

The trial court reasoned that because appellant was not asserting the defense of mental disease or defect, any references to appellant's sanity or insanity would only serve to confuse the jury. Appellant argues that the exclusion of these phrases denied the jury the full import and meaning of his own words, that is, a possible indication that he had remorse for his actions or corroboration of other testimony that he suffered from extreme emotional disturbance.

■ The decision to delete the portions of appellant's confession was an evidentiary ruling within the trial court's broad discretion, which we will not reverse unless the trial court manifestly abused its discretion. *Billett* v. *State*, 317 Ark. 346, 877 S.W.2d 913 (1994). Here, the trial court specifically stated that appellant would be allowed to present those portions of his confession relevant to his claim of extreme emotional disturbance. Thus, the trial court carefully concluded that only the references to "sanity" or "insanity" be deleted since appellant was not claiming mental disease or defect. We agree that those references would have been confusing to the jury and cannot say the trial court manifestly abused its discretion in this regard.

■ Two points are important to our conclusion that the trial court did not abuse its discretion in omitting the above-quoted phrases from appellant's confession. First, appellant does

not argue that his confession should have been admitted intact. Second, in addition to the challenged excisions, upon request by appellant and agreement with the state, the trial court excised certain other phrases from the confession, including language that appellant intended to plead guilty by reason of insanity. The trial court's careful consideration of all the requested omissions and its consistent exclusion of all references to the words "sane" or "insane," including appellant's request to omit the reference to appellant's intention to plead guilty by reason of insanity, prevent us from finding a manifest abuse of discretion.

Accordingly, we affirm the judgments of conviction for capital murder and attempted capital murder reached in the guilt phase of the trial.

We now consider the two assignments of error involving the penalty phase. Appellant asserts two points of error involving aggravating and mitigating circumstances. First, he challenges the sufficiency of the evidence to support the finding of the aggravating circumstance. Second, he challenges the sufficiency of the evidence to support the finding that the aggravating circumstance substantially outweighed the mitigating circumstances. These two arguments and our resolution of them apply to both death sentence verdicts because the verdict forms and the jury's actions with respect to those forms were identical for both counts of capital murder.

Appellant argues the trial court erred in failing to set aside the death sentence verdicts due to insufficient evidence of the sole aggravating circumstance found by the jury — that the murders were committed in an "especially cruel" or "especially depraved" manner as those terms are defined in Ark. Code Ann. § 5-4-604(8) (Repl. 1993).

The state contends this argument is procedurally barred from appellate review because it was not argued to the trial court in a timely manner or in a sufficiently specific manner. The state relies on former A.R.Cr.P. Rule 36.21(b) and A.R.Cr.P. Rule 33.1 (per curiam July 10, 1995) concerning motions for directed verdict and challenges to the sufficiency of the evidence. Specifically, the state contends appellant should have objected to the submission of the aggravating circumstance to the jury at the close of the state's case during the penalty phase, and again at

the close of all the evidence during the penalty phase. In the spirit of *Walker* v. *State*, 318 Ark. 107, 883 S.W.2d 831 (1994), the state further contends appellant was required to apprise the trial court of the specific element of the aggravating circumstance that was allegedly missing so that the state could be allowed an opportunity to supply the missing evidence.

The state's only authority for this argument is a capital murder case in which this court applied the contemporaneous objection rule during the guilt phase of the trial. *Johnson* v. *State*, 308 Ark. 7, 22, 823 S.W.2d 800, 808, *cert. denied*, 112 S. Ct. 3043 (1992). The state does not cite us to any authority, nor are we independently aware of any, in which this court has applied our rules on motions for directed verdict made in the guilt phase of a criminal case to the penalty phase of a capital case. Therefore, this issue is one of first impression for this court.

■ Regarding the sufficiency of the evidence of aggravating or mitigating circumstances, this court has stated:

> We think it a better practice, and less confusing to the jury, for the circuit judge to omit from submission any aggravating or mitigating circumstances that are completely unsupported by any evidence, and we take this opportunity to direct the circuit judges of Arkansas to hereafter allow this alternate procedure. If there is any evidence of the aggravating or mitigating circumstances, however slight, the matter should be submitted to the jury. Of course, counsel may object to the determination of the trial court the same as they may object to any other form of verdict.

> . . . .

> [W]e do not require the same degree of proof to sustain a jury finding that an aggravating or mitigating circumstance exists as we would require to sustain a conviction if that circumstance was a separate crime.

> It is a matter of judgment whether the facts support the findings of the jury of aggravating and mitigating circumstances, but we will not substitute our judgment for the judgment of the jury that heard the evidence if there is a reasonable and understandable application of the facts to the statutory circumstances.

*Miller* v. *State*, 269 Ark. 341, 354-55, 605 S.W.2d 430, 438-39 (1980). In applying the foregoing rule several times, this court has clearly indicated that the defendant objected below. *See, e.g.,* *Wainwright* v. *State*, 302 Ark. 371, 790 S.W.2d 420 (1990), *cert. denied*, 499 U.S. 913 (1991) (indicating the appellant moved to strike one of the aggravating circumstances), and *Williams* v. *State*, 274 Ark. 9, 621 S.W.2d 686 (1981), *cert. denied*, 459 U.S. 1042 (1982) (stating the trial court allowed the jury to consider aggravating circumstance over the appellant's objection).

■ Although we have never expressly applied our rules on motions for directed verdict made in the guilt phase to the penalty phase of a bifurcated trial of capital murder, we have consistently required a defendant to object to the death sentence verdict in the same manner as any other verdict. *Miller*, 269 Ark. 341, 605 S.W.2d 430. Therefore, because appellant did not move for a directed verdict or object to the submission of the aggravating circumstance to the jury until after the jury returned the verdict, we are persuaded by the state's argument that this point is procedurally barred and do not consider the merits of appellant's argument.

For his second assignment of error in the penalty phase, appellant contends the trial court erred in refusing to set aside the death sentence verdicts based upon insufficient evidence that the aggravating circumstance outweighed the mitigating circumstances beyond a reasonable doubt. Appellant's support of this argument is three-fold. First, he points to his medical history. Second, he claims the jury was confused during deliberation of the penalty phase. Third, he claims the jury incorrectly completed the verdict form pertaining to mitigating circumstances entitled "AMCI Form 2 — Mitigating Circumstances."

As for appellant's medical history, he produced evidence that, after using the drug Valium for the previous ten years, he received his last dosage approximately one month before the murders. Appellant also produced evidence that he suffered from several psychiatric disorders, that his Valium therapy had been mismanaged, and that a combination of these factors played a role in his conduct on the night of the crimes. Appellant also introduced an expert opinion that he suffered from a mental disease or defect that impaired his ability to appreciate the crimi-

nality of his conduct. Appellant argues this evidence was unrebutted by the state.

The state correctly contends this was a credibility issue for the jury to resolve. The jury could have discounted the medical history evidence, or while accepting its accuracy, found it immaterial. *Duncan* v. *State*, 291 Ark. 521, 726 S.W.2d 653 (1987). Moreover, appellant's argument that the jurors completely ignored proof of the mitigating circumstances is disproved by the fact that, with respect to Form 2, at least one of the jurors concluded the medical history was indeed a mitigating circumstance, though not all of the jurors agreed.

As for the jury's confusion, appellant relies heavily on the fact that, during deliberation in the sentencing phase, the jury asked questions concerning the procedure they were to follow in completing the death sentence verdict forms. The jurors were properly called into open court for the trial court to address their questions. The following occurred:

> BY THE COURT: Ladies and Gentlemen, the Bailiff has given me a note containing a couple of questions that you have. Let me go over it with you. The first part, if you check one aggravating circumstance, do you have the privilege to check mitigating circumstances; and that's yes.
>
> Then you have, or, is Mr. Willett given the death sentence. That's no.
>
> Then the next sentence can we say there are aggravating and mitigating circumstances; and that's yes.
>
> If you look at that Form one, that's your aggravating circumstance and Form two are mitigating and you go through those and if they exist, then you check it. Form three is kind of your conclusions; and I think you have to make three specific findings or more on there. It's just like the way that says and then the fourth is your verdict. I think if you get those forms and read this, it pretty well — I notice down here you say, don't fully understand and would like to hear the instructions one more time. Do you want me to read this or is there something — I want to try to help you understand this, if I can.

BY A JUROR: Can I ask you a question?

BY THE COURT: Let me hear it.

BY THE JUROR: Well, like on the last page do we all have to unanimously agree?

BY THE COURT: The fourth one is the verdict, which is the two choices that you have. Whichever choice that you make, all twelve of you sign it.

BY A JUROR: But, like on all the questions concerning —

BY THE COURT: Just the Foreman. If you notice on Form one and maybe Form two and three, it just has "Foreman." That's your Foreman. The verdict form, that's Form four, the final decision of what you do, all twelve of you sign that.

BY A JUROR: Does it have to be unanimous? Does all twelve have to agree on the same thing?

BY THE COURT: Right. The first three forms — all four forms are unanimous. The first three forms just require your Foreman's signature; but the verdict form, when you select your punishment, that's unanimous. It's unanimous and all twelve of you have to sign your name. Have you got it? All right. You can return with the Bailiff.

Appellant contends that the jury's confusion was not resolved by the trial court's answers to their questions and that their confusion is manifested in the conflicting manner in which they completed Form 2. In Subsection A of Form 2, the jurors unanimously found the following mitigating circumstances probably existed at the time of the murder: that appellant had no prior history of criminal conduct, that appellant had been a model prisoner, and that appellant had cooperated with police by voluntarily giving a statement about the crimes at issue. However, in subsection C of Form 2, the jurors found there was evidence of the same three circumstances, but unanimously agreed that they were not mitigating circumstances. Essentially, appellant contends that subsections A and C are mutually exclusive.

The state agrees that Form 2 seems to have been filled out

incorrectly. However, the state contends appellant suffered no prejudice because the jurors appeared in open court and orally confirmed their death-sentence verdicts.

The model instruction that accompanies the capital murder Forms, AMCI 2d 1008, states that unlike an aggravating circumstance, the jury is not required to be convinced of a mitigating circumstance beyond a reasonable doubt; rather, a mitigating circumstance is shown if the jury believes from the evidence that it probably existed. We therefore agree that subsections A and C of Form 2 are mutually exclusive. Because the jury was instructed in accordance with AMCI 2d 1008 in this case, there can be no doubt that they completed Form 2 incorrectly when they checked the same three circumstances in subsections A and C.

We are somewhat inclined to conclude that the jury's error in completing Form 2 was harmless for three reasons. First, in "Form 3 — Conclusions," the verdict form pertaining to the weighing of aggravating and mitigating circumstances, the jurors concluded that the aggravating circumstance outweighed beyond a reasonable doubt any mitigating circumstance found by any juror to exist. Second, also in Form 3, the jury concluded the aggravating circumstance justified beyond a reasonable doubt the death sentence. Third, as the state contends, the jurors confirmed in open court that the two verdicts of death by lethal injection were indeed their verdicts. Therefore, even if we assume the jury concluded in Form 2 that the three mitigating circumstances probably existed, we could conclude, on the basis of Form 3, that they did not outweigh the aggravating circumstance. However, we are not aware of any authority that permits the application of a harmless error analysis to mitigating circumstances. *See, Shipper* v. *South Carolina*, 476 U.S. 1 (1986) (indicating that errors relating to mitigating circumstances are prejudicial under any standard). Moreover, this court can perform the harmless error analysis in Ark. Code Ann. § 5-4-603(d) (Repl. 1993) only if the jury found no mitigating circumstances. *Greene*, 317 Ark. 350, 878 S.W.2d 384. On this record, it is impossible to discern whether the jury found any mitigating circumstances. Therefore, we reverse the judgments of sentence to death and remand for resentencing.

We turn now to appellant's final three points for rever-

sal, which are three constitutional challenges to our death penalty statutes. In the first of these, appellant contends the Arkansas capital murder scheme does not allow a jury to show mercy to a particular defendant and therefore unconstitutionally mandates the death sentence. This court has considered and rejected this argument in several cases. *E.g., Dansby* v. *State*, 319 Ark. 506, 515-16, 893 S.W.2d 331, 336-37 (1995) (quoting *Johnson*, 308 Ark. at 17-18, 823 S.W.2d at 806). We reject the argument again in this case.

Next, appellant contends the statutory definition of the aggravating circumstance "especially cruel or depraved" in section 5-4-604(8) is void for vagueness on its face and as applied to him. He claims the definitions do not provide guidance to channel the jurors' discretion with clear and objective standards.

The General Assembly rewrote this aggravating circumstance in Act 683 of 1991 after this court declared in *Wilson* v. *State*, 295 Ark. 682, 751 S.W.2d 734 (1988), that its statutory predecessor was unconstitutional in violation of the Eighth and Fourteenth Amendments to the federal constitution. The 1991 statutory amendment includes language substantially similar, if not identical, to language upheld as constitutional by the United States Supreme Court in *Walton* v. *Arizona*, 497 U.S. 639 (1990). *Greene*, 317 Ark. 350, 878 S.W.2d 384. For the reasons stated by the Supreme Court in *Walton*, our statute is therefore not void on its face.

In the instant case, the jury was instructed on the statutory definitions of "especially cruel" and "especially depraved." In fact, the definitions appeared on the face of "Form 1 —Aggravating Circumstances" the verdict form pertaining to aggravating circumstances. Appellant's argument that the definitions are unconstitutional as applied to him does not rest upon an independent ground, but rests upon a finding that the definitions are void on their faces. Given the limitations of appellant's argument, and given our conclusion that the definitions are not void on their faces, we hold that this statutory aggravating circumstance was not unconstitutional as applied to appellant.

Finally, appellant argues the capital murder statute under which he was charged, section 5-10-101(a)(4), is unconstitutional under the federal Eighth and Fourteenth Amendments

because it fails to adequately narrow the class of persons eligible for the death penalty and permits arbitrary prosecutions. This court has previously considered and rejected this argument. *E.g., Nooner* v. *State*, 322 Ark. 87, 907 S.W.2d 677 (1995); *Greene*, 317 Ark. 350, 878 S.W.2d 384; *Cox* v. *State*, 313 Ark. 184, 195-96, 853 S.W.2d 266, 271-72 (1993) (citing *Johnson*, 308 Ark. at 16-17, 823 S.W.2d at 805-06). We do so again in this case.

▅▅▅ For the reasons stated in *Williams* v. *State*, 321 Ark. 344, 896 S.W.2d 874 (1995), we no longer conduct a proportionality review of the death sentence. However, our review on appeal may include a review of the aggravating and mitigating circumstances presented to the jury and a harmless error review in accordance with section 5-4-603(d). We conclude no erroneous finding of any aggravating circumstance was made by the jury. Therefore, we do not conduct a harmless error review under section 5-4-603(d). *Sasser* v. *State*, 321 Ark. 438, 902 S.W.2d 773 (1995). In addition, as we previously concluded, we are not able to discern whether the jury found mitigating circumstances. *See, Johnson* v. *State*, 321 Ark. 117, 900 S.W.2d 940 (1995), and *Greene*, 317 Ark. 350, 878 S.W.2d 384 (stating that when mitigating circumstances are found, the statute does not authorize a harmless error review). In accordance with Ark. Sup. Ct. R. 4-3(h), the record has been reviewed for prejudicial errors objected to by appellant but not argued on appeal, and no such errors were found in this case.

The judgments of conviction are affirmed, as are the judgments of sentence on the attempted charges. The judgments of sentence to death by lethal injection are reversed, and the case is remanded to the trial court for resentencing in accordance with section 5-4-616.

GLAZE, J., dissents in part.

TOM GLAZE, Justice, dissenting in part. I respectfully dissent. The jury, in my view, was well aware of the pertinent circumstances presented to it when deciding Alan Willett's sentence, and after duly hearing and considering the evidence bearing on those circumstances, the jury concluded the aggravating circumstances justified beyond a reasonable doubt a sentence of death. For the readers' benefit and understanding of this sentencing issue, I attach to my opinion the forms the jury utilized

and checked when arriving at its death penalty decision. Those forms are identical to the ones set out in AMCI2d 1008 at pages 171 through 185.[1]

As instructed by the trial court, the jury first considered Form 1 which set forth a list of possible aggravating circumstances, and the jury unanimously found one of them existed, namely, Willett's murders were committed in an especially cruel manner. One aggravating circumstance is enough to support a jury's imposition of the death penalty. *Hayes* v. *State*, 280 Ark. 509, 660 S.W.2d 648 (1983), *cert. denied*, 465 U.S. 1051 (1984).

Also, following the trial court's instructions, the jury proceeded to Form 2, which contains four sections, A, B, C and D, which required the jury to determine whether mitigating circumstances were shown to exist. Sections A, C and D are relevant here. Under Section A, the jury unanimously found the evidence showed the following three mitigating circumstances:

(✓) Before the 14th of September, 1993 [the date of the murders], Alan Willett had no history of criminal conduct.

(✓) After the 14th of September, 1993, Alan Willett has been a model prisoner.

(✓) Alan Willett, after the 14th of September, 1993, cooperated with law enforcement in that he voluntarily gave a statement as to what happened on the 14th of September, 1993.

Under Section C of Form 2, the jury then unanimously checked the *same* three circumstances listed in Section A, stating they were not mitigating. And the jury then left *unchecked* Section D which reads as follows:

( ) No evidence of a mitigating circumstance was presented by either party during any portion of the trial (check only if no evidence was presented. If evidence was presented but the jury agreed that it was not mitigating, check Section C).

From the above forms, one vital point is clear — the jury agreed that evidence of the same three circumstances listed in

---

[1]The listed circumstances in the forms were modified to reflect the facts in this case.

sections A and C had been shown. The majority opinion, however, suggests it is impossible to discern whether the jury found any mitigating circumstances because Section C refers to the three circumstances as "not mitigating" while Section A referred to them as "mitigating."

The majority opinion, in my view, overlooks the jurors' obvious consideration of the evidence and circumstances it rejected when imposing the death sentence, and it totally ignores what is meant by mitigating circumstances. Mitigating circumstances commonly represent evidence which a jury may consider as extenuating or reducing the degree of moral culpability. *See Black's Law Dictionary* 1002 (6th ed. 1990). Here, the jury's checked forms acknowledged there was evidence showing Willett (1) had no prior criminal history, (2) had been a model prisoner and (3) had voluntarily confessed to the murders; nonetheless the jury concluded those circumstances were insufficient to reduce his sentence to life without parole. Whether the circumstances checked in Form 2, Section C, were mislabeled "not mitigating" is of little consequence, so long as the penalty forms reflect the jurors considered the evidence bearing on Willett's favorable conduct, but they decided those circumstances did not warrant reducing Willett's punishment.

While Form 2 should be slightly edited so as to provide some additional clarity to the jury when imposing sentencing, the majority court is far off the mark in suggesting the jury here was somehow confused when imposing the death penalty. Again, the sentencing forms here reveal with convincing clarity that the jury heard and considered evidence bearing on Willett's favorable conduct exhibited before and after the murders he committed, but it still unanimously decided that Willett should be put to death. No amount of this court's reshuffling and reinterpreting the language employed in the jury forms in this case can serve to muddle or eviscerate the jury's obvious consideration of the relevant evidence when imposing the death penalty.

I would affirm both the conviction and sentencing judgments.

FORM 1

AGGRAVATING CIRCUMSTANCES

MAR 11 1994

CIRCUIT AND CHANCERY CLERK

We, the jury, after careful deliberation, have unanimously determined that the following aggravating circumstance or circumstances existed beyond a reasonable doubt at the time of the commission of the capital murder, count one:

( ✓ ) The capital murder was committed in an especially cruel or depraved manner.

A capital murder is committed in an especially cruel manner when, as a part of a course of conduct intended to inflict mental anguish, serious physical abuse, or torture upon the victim prior to the victim's death, mental anguish, serious physical abuse or torture is inflicted. Mental anguish is defined as the victim's uncertainty as to his ultimate fate. Serious physical abuse is defined as physical abuse that creates a substantial risk of death or that causes protracted impairment of health, or loss or protracted impairment of the function of any bodily member or organ. Torture is defined as the infliction of extreme physical pain for a prolonged period of time prior to the victim's death.

A capital murder is committed in an especially depraved manner when the defendant relishes the murder., evidencing debasement or perversion, or shows an indifference to the suffering of the victim and evidences a sense of pleasure in committing the murder.

Priscilla Williams
FOREMAN

634

FORM 2

FILED
MAR 1 1 1994

Jane Burkhalter
CIRCUIT AND CHANCERY CLERK

MITIGATING CIRCUMSTANCES

COUNT 1

A. ( √ ) We unanimously find that the following mitigating circumstances probably existed at the time of the murder:

( ) The capital murder was committed while Allen Willet was under extreme emotional disturbance.

( ) The capital murder was committed while Allen Willet was acting under unusual pressures.

( ) The capital murder was committed while the capacity of Allen Willet to appreciate the wrongfulness of his conduct was impaired as a result of mental disease or defect.

( √ ) Before the 14th of September, 1993, Allen Willet had no history of criminal conduct.

( √ ) After the 14th of September, 1993, Allen Willet has been a model prisoner.

( ) Before the 14th of September, 1993, Allen Willet was a good and loving father and brother.

( ) The defendant, Allen Willet, has shown remorse for the crime.

( ) The crimes committed on the 14th day of September, 1993, were out of character for Allen Willet.

( ) Before the 14th of September, 1993, Allen Willet helped coach little league baseball and, in particular, helped a brain-damaged child.

( √ ) Allen Willet, after the 14th of September, 1993, cooperated with law enforcement in that he voluntarily gave a statement as to what happened on the 14th of September, 1993.

( ) Allen Willet can lead a productive life in prison as an inmate without the possibility of parole.

( ) The capital murder occurred while the defendant was in an agitated state which was the result of the mismanagement of his valium therapy.

( ) Other: Specify in writing. _____

_____

_____

B. (√) One or more members of the jury believed that the following mitigating circumstances probably existed, but the jury did not unanimously agree:

( ) The capital murder was committed while Allen Willet was under extreme emotional disturbance.

(√) The capital murder was committed while Allen Willet was acting under unusual pressures.

( ) The capital murder was committed while the capacity of Allen Willet to appreciate the wrongfulness of his conduct was impaired as a result of mental disease or defect.

( ) Before the 14th of September, 1993, Allen Willet had no history of criminal conduct.

( ) After the 14th of September, 1993, Allen Willet has been a model prisoner.

( ) Before the 14th of September, 1993, Allen Willet was a good and loving father and brother.

( ) The defendant, Allen Willet, has shown remorse for the crime.

( ) The crimes committed on the 14th day of September, 1993, were out of character for Allen Willet.

( ) Before the 14th of September, 1993, Allen Willet helped coach little league baseball and, in particular, helped a brain-damaged child.

( ) Allen Willet, after the 14th of September, 1993, cooperated with law enforcement in that he voluntarily gave a statement as to what happened on the 14th of September, 1993.

( ) Allen Willet can lead a productive life in prison as an inmate without the possibility of parole.

( √ ) The capital murder occurred while the defendant was in an agitated state which was the result of the mismanagement of his valium therapy.

( ) Other: Specify in writing. _____

_____

_____

C. ( √ ) There was evidence of the following circumstances, but the jury unanimously agreed that they were not mitigating circumstances.

( ) The capital murder was committed while Allen Willet was under extreme emotional disturbance.

( ) The capital murder was committed while Allen Willet was acting under unusual pressures.

( ) The capital murder was committed while the capacity of Allen Willet to appreciate the wrongfulness of his conduct was impaired as a result of mental disease or defect.

( √ ) Before the 14th of September, 1993, Allen Willet had no history of criminal conduct.

( √ ) After the 14th of September, 1993, Allen Willet has been a model prisoner.

( ) Before the 14th of September, 1993, Allen Willet was a good and loving father and brother.

( ) The defendant, Allen Willet, has shown remorse for the crime.

( ) The crimes committed on the 14th day of September, 1993, were out of character for Allen Willet.

( ) Before the 14th of September, 1993, Allen Willet helped coach little league baseball and, in particular, helped a brain-damaged child.

(✓) Allen Willet, after the 14th of September, 1993, cooperated with law enforcement in that he voluntarily gave a statement as to what happened on the 14th of September, 1993.

( ) Allen Willet can lead a productive life in prison as an inmate without the possibility of parole.

( ) The capital murder occurred while the defendant was in an agitated state which was the result of the mismanagement of his valium therapy.

( ) Other: Specify in writing. _____

_____

_____

D. ( ) No evidence of a mitigating circumstance was presented by either party during any portion of the trial. (Check only if no evidence was presented. If evidence was presented but the jury agreed that it was not mitigating, check Section C).

_Priscilla Williams_
FOREMAN

638

FORM 3

CONCLUSIONS

FILED MAR 1 1 1994

*Jane Buckhahn*
CIRCUIT AND CHANCERY CLERK

The jury, having reached its final conclusions on count one, will so indicate by having its Foreman place a check mark ( ) in the appropriate space in accordance with the jury's findings. In order to check any space, your conclusions must be unanimous. The Foreman of the jury will then sign at the end of this form.

WE, THE JURY, CONCLUDE:

(a) ( √ ) One or more aggravating circumstances <u>did</u> exist beyond a reasonable doubt at the time of the commission of the capital murder.

(If you do not unanimously agree to check paragraph (1), then skip (b) and (c) and sentence Allen Willet to life imprisonment without parole on Form 4.)

(b) ( √ ) The aggravating circumstances outweigh beyond a reasonable doubt any mitigating circumstances found by any juror to exist.

(If you do not unanimously agree to check paragraph (b), then skip (c) and sentence Allen Willet to life imprisonment without parole on Form 4.)

(c) ( √ ) The aggravating circumstances justify beyond a reasonable doubt a sentence of death.

(If you do not unanimously agree to check paragraph (c), then sentence Allen Willet to life imprisonment without parole on Form 4.)

If you have checked paragraphs (a), (b) and (c), then sentence Allen Willet to death on Form 4.

-2-

Otherwise, sentence Allen Willet to life imprisonment without parole on Form 4.

Priscilla Williams

FOREMAN