Michael Marvin LOY *v.* STATE of Arkansas

CR 92-67                                      832 S.W.2d 499

Supreme Court of Arkansas
Opinion delivered June 22, 1992

*Terri Harris*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Didi H. Sallings*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. The appellant, Michael Marvin Loy, appeals his conviction for solicitation to commit first-degree murder by use of a homemade bomb and his sentence to a term of forty-two years. He asserts as grounds that it was reversible error for the circuit court to admit into evidence 1) an audiotaped conversation between Loy and an informant, and 2) a video depiction of certain demonstrations and a simulated explosion of the bomb. We hold that neither point has merit, and we affirm.

On March 9, 1991, at about 3:00 p.m., an informant, Donald Hurt, advised the Garland County Sheriff's Office that earlier that day he had been offered $5,000 by Loy to kill Charles McCoy using a homemade bomb. The matter was assigned to Lieutenant Larry Selig at the sheriff's office, who asked Hurt to wear a body microphone and record a discussion of the planned murder with Loy. Hurt agreed to do so. On that same day at about 5:30 p.m., Hurt met with Loy wearing a body microphone at the Food-4-Less parking lot in Hot Springs. The meeting was videotaped and observed by three members of the sheriff's department, including Lieutenant Selig. The body mike worn by Hurt allowed the conversation between Hurt and Loy to be monitored.

After the meeting, Hurt got out of the car carrying a paper sack, and Loy was arrested. Hurt then turned over the paper sack which contained the bomb to the sheriff's office. The bomb consisted of a glass jar, firecrackers, black gunpowder, and BB's.

The sheriff's office next enlisted the assistance of the Air Force Base explosives squad to disarm the bomb. When the squad attempted this, however, the bomb detonated. The resulting debris was recovered and sent to the F.B.I. in Washington, D.C., which rebuilt a similar bomb and exploded it under controlled circumstances. The bomb and three demonstrations of how it worked were videotaped by the F.B.I.

Loy was charged with solicitation to commit murder and criminal possession of explosives, although the possession charge was subsequently nolle prossed by the State. Prior to trial, he moved to suppress the audiotape of the conversation between Hurt and himself and also the F.B.I. videotape of the explosion. A

hearing was held on the motions on September 26, 1991, and Loy was unsuccessful on both scores. The tapes were admitted into evidence at the ensuing trial by jury on October 17, 1991, and Loy was found guilty as charged and sentenced to forty-two years imprisonment.

Loy first contends that the audiotaped conversation between Hurt and himself was inaudible in several places and consequently was inadmissible because it was misleading and untrustworthy. He argues in conjunction with this point that the untrustworthiness was further proved by the fact that the prosecution tried to introduce a transcript of the tape after the tape was played to the jury. The circuit court refused to admit the transcript into evidence.

■ We have held that tape recordings are admissible "unless the inaudible portions are so substantial as to render the recording as a whole untrustworthy." *Hamm* v. *State*, 301 Ark. 154, 157, 782 S.W.2d 577, 579 (1990); *Harvey* v. *State*, 292 Ark. 267, 729 S.W.2d 406 (1987). We have also said that this is a matter within the trial court's discretion, and we will not reverse absent an abuse of discretion. *Id.*

In this case, the circuit court heard the tape recording at the hearing on Loy's motion to suppress and denied that motion. The tape was then played for the jury at trial. The prosecutor next attempted to introduce a transcript of the tape after the tape was played to facilitate the jury's understanding, and the court refused to admit it.

■ Loy's argument on appeal is premised largely on the colloquy that occurred between the prosecutor and Lieutenant Selig at trial outside of the presence of the jury:

PROSECUTOR: All right, Sir and I notice that tape is kind of inaudible in quite a few places.

SELIG: In spots it is, yes, it is, because of the rattling of the paper sacks.

PROSECUTOR: And with traffic passing by?

SELIG: That is correct.

. . . .

PROSECUTOR: In your opinion, Officer Selig, would somebody be better able to understand the tape if they had that transcript with them?

SELIG: In my opinion they definitely would.

This colloquy and the prosecutor's attempt to introduce the transcript are not sufficient, in and of themselves, to establish untrustworthiness of the entire tape. We do not agree that anytime a tape is inaudible in many places, this renders the intelligible portions of the tape inherently prejudicial and unreliable. The tape may still be probative on certain points. Nor can we agree that the prosecutor's subsequent efforts to introduce the transcript of the tape nullifies the complete tape's trustworthiness. The circuit court obviously did not concur that the tape was so deficient as to be of no assistance to the jury. Moreover, the court correctly allowed the tape to speak for itself without any enhancement by a subsequent introduction of the prosecutor's transcript after the tape had been played. In sum, we do not hold that the circuit court abused its discretion on this point.

We likewise hold that the circuit court was on firm ground when it admitted the videotape of the simulated bomb explosion into evidence. Loy argues that the tape was irrelevant, prejudicial, and cumulative to the criminal offense of solicitation. The applicable statute reads:

(a) A person solicits the commission of an offense if, with the purpose of promoting or facilitating the commission of a specific offense, he commands, urges, or requests another person to engage in specific conduct which would:

(1) constitute that offense;

(2) constitute an attempt to commit that offense;

(3) cause the result specified by the definition of that offense; or

(4) establish the other person's complicity in the commission or attempted commission of that offense.

Ark. Code Ann. § 5-3-301 (1987).

█ Relevant evidence is defined under the Rules of Evidence as "evidence having any tendency to make the existence of

any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ark. R. Evid. 401 (1992). What is relevant evidence and what is cumulative or prejudicial lies in the discretion of the trial judge, and we have so held many times regarding a variety of tangible evidence. *See, e.g., Hughes* v. *State*, 303 Ark. 340, 797 S.W.2d 419 (1990) (occult books and magazines); *Watson* v. *State*, 308 Ark. 643, 826 S.W.2d 281 (1992) (photographs); *Walker* v. *State*, 301 Ark. 218, 783 S.W.2d 44 (1990) (crack cocaine); *Cash* v. *State*, 301 Ark. 370, 784 S.W.2d 166 (1990) (photographs).

■ Here, we are dealing with a reenactment of bomb construction, demonstrations, and detonation. Based on the reenactment, special agent Thomas J. Mohnal of the F.B.I. concluded that the bomb was capable of killing a human being. He further confirmed that the F.B.I. bomb, though not identical, was substantially similar to the device given Hurt by Loy. That is all the law requires for an admissible reenactment of an original happening. *See Carr* v. *Suzuki Motor Co.*, 280 Ark. 1, 655 S.W.2d 364 (1983).

■ Loy is correct that the crime charged was a solicitation offense, but it was solicitation to commit first degree murder. Accordingly, evidence of the instrumentality to be used in the murder is entirely relevant. It clearly evidences the purpose of the solicitation as well as the means that Loy promoted to perpetrate foul play. As such, the simulated bomb and the videotape depicting its detonation easily qualify as proof of a material fact under Rule 401. The circuit court was correct in receiving the videotape into evidence, and we will not disturb its decision.

Affirmed.