Cite as 2020 Ark. App. 289

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-19-670

|  |  |  |
|---|---|---|
| BRITTANY KOHLER | | **Opinion Delivered** May 6, 2020 |
| | APPELLANT | APPEAL FROM THE BAXTER COUNTY CIRCUIT COURT [NO. 03PR-18-251] |
| V. | | |
| RANDY GENE CRONEY | | HONORABLE SUZIE LAYTON, JUDGE |
| | APPELLEE | AFFIRMED |

## LARRY D. VAUGHT, Judge

Brittany Kohler appeals the Baxter County Circuit Court's order granting appellee Randy Croney's petition to adopt their son, KC. We affirm.

Brittany gave birth to KC on March 12, 2012. Randy was present at the hospital. During the first year of KC's life, Randy had brief and sporadic contact with him, including a time period when he did not see KC at all and questioned whether KC was his son. Randy filed a petition to establish paternity and for custody on May 16, 2013, that resulted in an order establishing his paternity and a shared joint-custody arrangement with Brittany retaining primary physical custody, which was entered on December 30, 2014.

For parts of 2014 and 2015, Brittany worked at a restaurant and bar called Top Cat that Randy believed was inappropriate for KC. He objected to Brittany's taking their child to work with her. Brittany quit working at Top Cat when her boyfriend, with whom she lived, urged her quit.

On January 5, 2017, Randy filed a petition for ex parte and permanent custody and for contempt. The court granted the petition and, following Brittany's arrest for methamphetamine possession, ultimately entered an order awarding Randy sole custody and denying Brittany any visitation until she was released from jail and could provide a clean drug test. The court ordered Brittany, once she was released from jail, to pay $200 per month in child support to Randy based on an imputed minimum-wage income.

Following the entry of this order, Brittany tested positive for drugs in November and December 2017. Brittany spent approximately twenty-one days in jail in January 2018 and then went to rehab. On April 1, 2018, Brittany was in a serious car accident and broke her back. She was hospitalized and then bedridden for a significant period of time. In May, Brittany filed a motion to modify visitation. In July, she began working part time. In September, she began to receive annuity payments from a settlement related to her car accident.

On October 29, Randy filed the adoption petition at issue in this appeal. On February 6, 2019, the court held a hearing on the petition, and on May 14, it issued its order granting Randy's petition to adopt KC and finding that Brittany's consent was not required.

The court found that since the entry of the ex parte order, Brittany's only visitation with the child was in May 2017, approximately two years before. In the two years since the entry of the ex parte order, Brittany had paid only $460 in child support, consisting of two payments in 2018. She had then paid $140 the week of the adoption hearing. The court further found that Brittany had failed to provide KC with birthday or Christmas gifts, cards, or necessary supplies. The court found that Brittany had been in and out of jail, had used illegal

drugs, was unable to maintain stable employment or housing, and no longer had custody of her other children.

The court specifically noted in its written order that it did not find Brittany to be credible, especially her testimony about trying to contact KC. The court noted that Brittany had chosen to spend money on legal fees to seek custody of one of her other children while not complying with court-ordered child support for KC. Even after receiving settlement money from her car accident, Brittany failed to pay child support. The court found that Brittany's consent to the adoption was not required.

In determining whether adoption would be in KC's best interest, the court noted that Brittany did not have custody of her other two children and that KC did not have a relationship with those half siblings. Brittany's mother was the only maternal relative with whom KC had any sort of relationship, and the court found that the grandmother had not had contact with the child for more than a year. The court then described Randy's household and employment as stable and noted that KC was thriving in Randy's care. Compared to Brittany's history of drug use, incarceration, unemployment, unstable housing, and tumultuous and sometimes violent romantic relationships, the court found that adoption by Randy was in KC's best interest and granted the petition. Brittany filed a timely notice of appeal, and this appeal follows.

In *Racine v. Nelson*, 2011 Ark. 50, at 11, 378 S.W.3d 93, 100, the Arkansas Supreme Court explained:

> Adoption statutes are strictly construed, and a person who wishes to adopt a child must prove that consent is unnecessary by clear and convincing evidence. *Powell v. Lane*, 375 Ark. 178, 289 S.W.3d 440 (2008). A circuit court's finding that consent is unnecessary because of a failure to support or communicate with the child will not be

3

reversed unless clearly erroneous. *Id.* There is a heavy burden placed upon the party seeking to adopt a child, without the consent of a natural parent, to prove the failure to communicate or the failure to support by clear and convincing evidence. *Harper v. Caskin*, 265 Ark. 558, 580 S.W.2d 176 (1979).

The Revised Uniform Adoption Act, Arkansas Code Annotated sections 9-9-201 et seq. (Repl. 2015 & Supp. 2019) governs adoption proceedings. Section 9-9-206 states in relevant part that "a petition to adopt a minor may be granted only if written consent to a particular adoption has been executed by: (1) the mother of the minor. . . ." The only exception to this requirement is found in Arkansas Code Annotated section 9-9-207(a):

> (a) Consent to adoption is not required of
>
>   (1) a parent who has deserted a child without affording means of identification or who has abandoned a child;
>
>   (2) a parent of a child in the custody of another, if the parent for a period of at least one (1) year has failed significantly without justifiable cause (i) to communicate with the child or (ii) to provide for the care and support of the child as required by law or judicial decree; ?

"Abandonment" is further defined by statute as

> the failure of the parent to provide reasonable support and to maintain regular contact with the child through statement or contact, when the failure is accompanied by an intention on the part of the parent to permit the condition to continue for an indefinite period in the future, and failure to support or maintain regular contact with the child without just cause for a period of one (1) year.

Ark. Code Ann. § 9-9-202(7).

Brittany's first argument on appeal is that the circuit court erroneously shifted the burden of proof to her by requiring her to prove that she faced "insurmountable barriers" that prevented her from contacting or supporting KC. She notes that, by law, Randy had the burden of proving that Brittany's consent to the adoption was not required. She contends that the court shifted Randy's burden to her based on one sentence in the court's written order

4

stating that "the Court does not find there were insurmountable barriers preventing or impeding Respondent from seeking or taking action to comply with Court orders to exercise her visitation."

While we recognize that the circuit court inartfully included two words, "insurmountable barriers," in the order, there is no indication that these words were actually applied as the legal test to decide the outcome of the case. The court's order thoughtfully recites the applicable law and evaluates the evidence at length. We are satisfied that there was sufficient evidence to support the finding that Brittany failed to have contact with, or provide support for, KC for at least one year without just cause. Regarding the justification, the court expressly stated that it did not consider Brittany's incarceration, drug use, unemployment, or injury sufficient justification to excuse her failure to maintain contact and support. The "insurmountable barriers" language was simply dicta. Moreover, the court also expressly found that Brittany was not credible, and it did not believe her assertions that she had done everything she could to maintain contact with KC.

Brittany presents her argument in various ways—she claims that the court applied the wrong legal test; shifted the burden to her or, alternatively, minimized Randy's burden; and violated her due-process rights—but ultimately, each of these claims hinges on her contention that the court erroneously applied an "insurmountable barriers" standard. It did no such thing. We therefore need not address each argument in depth.

Brittany next challenges the court's best-interest finding, and again we affirm. Before an adoption petition can be granted, the circuit court must find from clear and convincing evidence that the adoption is in the best interest of the child. *Newkirk v. Hankins*, 2016 Ark.

5

App. 186, at 14–15, 486 S.W.3d 827, 835–36. We review the evidence de novo. *Id.* We will not reverse a circuit court's decision regarding the best interest of a child to be adopted unless it is clearly against the preponderance of the evidence, giving due regard to the opportunity and superior position of the circuit court to judge the credibility of the witnesses. *Id.* We give great weight to a circuit court's personal observations when the welfare of young children is involved. *Id.* The mere fact that a parent has forfeited her right to have her consent to an adoption required does not mean that the adoption must be granted; the court must further find from clear and convincing evidence that the adoption is in the best interest of the child. *Id.* The burden rests on the one seeking adoption to prove by clear and convincing evidence that adoption is in the child's best interest. *Id.* The ultimate determination of best interest is the primary objective of the circuit court in custody matters. *Id.*

In this case, the court noted Randy's stable home and employment, the fact that KC was doing well in school while in Randy's care, and Brittany's history of drug use and incarceration. It further noted her instability, volatile and sometimes violent relationships with men, and the fact that she had lost custody of her other children. While Brittany argues on appeal that adoption was not in KC's best interest because it would terminate his relationship with his half siblings and maternal grandmother, the evidence demonstrated that KC had no relationship with his half siblings prior to the adoption and had not seen or heard from his grandmother in over a year. In contrast, the court noted that KC had close family bonds with Randy's family. It is clear from the circuit court's order that the court carefully and thoughtfully weighed whether the adoption would be in KC's best interest, and we give significant weight to the circuit court's superior position to observe witnesses and determine issues related to the

6

welfare of the child. We are satisfied that the court's best-interest finding is supported by clear and convincing evidence, and we therefore affirm.

Affirmed.

VIRDEN and HARRISON, JJ., agree.

*Jeremy B. Lowrey*, for appellant.

*Maureen Harrod*, for appellee.