Cite as 2025 Ark. App. 551

# ARKANSAS COURT OF APPEALS
## DIVISION II
No. CV-24-609

| | |
|---|---|
| IN THE MATTER OF THE ADOPTION OF MINOR CHILDREN | Opinion Delivered November 12, 2025 |
| WILLIAM KYLE MURPHY<br>APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72PR-24-41] |
| V. | HONORABLE DOUG MARTIN, JUDGE |
| LAUREN TAYLOR MURPHY<br>APPELLEE | AFFIRMED |

**WAYMOND M. BROWN, Judge**

Appellant William Murphy appeals the order of the Washington County Circuit Court granting appellee Lauren Murphy's petition for single-parent adoption of the parties' two children, MB (D.O.B. 10-11-15) and MG (D.O.B. 04-17-18). The circuit court found that appellant's consent to the adoption was not needed and that the adoption was in the best interest of the children. Appellant argues on appeal that (1) the circuit court's justifiable-cause finding was clearly erroneous because appellee interfered with appellant's ability to contact his children; (2) the preponderance of the evidence does not support the circuit court's best-interest finding and is, therefore, clearly erroneous; (3) the circuit court improperly shifted the burden of proving a lack of justifiable cause to the party resisting the

adoption (appellant); and (4) the circuit court abused its discretion by refusing to consider appellant's motion for reconsideration. We affirm.

The parties were divorced in Texas by a decree filed on September 24, 2019. The decree stated that the parties had entered into an agreement whereby they were appointed joint managing conservators of the children. The children were to reside with appellee, and appellant was granted visitation the first weekend of each month with the ability to enjoy other weekends if notice requirements were met. At the time of the divorce, appellant was residing in Arkansas. Appellee subsequently moved to Arkansas with the children at the beginning of 2020. Appellant hired an attorney in December 2023 to register the Texas divorce decree. He also filed a motion for contempt against appellee. Appellee was served with the contempt action that same month, and on January 16, 2024, she filed a petition for single-parent adoption alleging that appellant's consent was not needed and that the adoption was in the children's best interest. Appellant filed an answer on January 25 denying the material allegations of appellee's petition and asking the circuit court to deny the petition.

The adoption hearing took place on April 22. Appellant testified that he is MB and MG's father and that he was opposed to appellee's single-parent adoption. He stated that appellee improperly withheld visitation from him. To support his position, he introduced text messages to appellee dating back to April 2023, wherein he received no response at all from appellee. He said that he purchased gifts for the children, but they were returned; however, he did not have any returned mail with him. He testified that he and appellee were

2

divorced on August 16, 2019, and at that time, the children were to remain with appellee, and he was granted visitation of at least one weekend a month. He said that based on the divorce decree, visitation with the children was to take place at his residence, but he moved from that specific residence in December 2019. He stated that appellee moved to Arkansas and that he knew where she lived for the last four years. He admitted that he told appellee in February 2020 that he was going to get a lawyer to reopen the case, but he never did. He also admitted that he sent a text message that same month telling appellee that he could not afford to see his children. He stated that he threatened to reopen the cases on several occasions but did not follow through with it. He also stated that he threatened to show up at appellee's residence with the police on June 6, 2023, to get his children but he did not go. Appellant said that since the divorce, he never went to appellee's residence to pick up the children for visitation and that he never filed any reports alleging that appellee interfered with his visitation. Appellant testified that he filed a contempt motion in Arkansas but admitted that he did not ask for extra visitation or for modification of his arrangement. He stated that he thought that by filing the foreign judgment in Arkansas, he would at least get the state minimum for visitation. He said he didn't want to reopen the case until he was stable. He stated that he last saw the children in person in 2019 and that he last spoke to them via FaceTime in June or July 2020.

Appellant stated on cross-examination that although he knew appellee's address, he did not just show up because he did not want to be charged with trespassing or something domestic. He testified that he sent text messages to appellee between April 2023 and January

3

16, 2024, with no response from her. He stated that appellee had been nonresponsive to his text messages longer than that, but he no longer had access to those messages. He said that his video communication with the children ended when he no longer had an iPhone because appellee told him the Duo mobile app took up too much storage on her phone, and she deleted it. He also said that visitation with his children ended when appellee moved back to Arkansas, approximately an hour away from him. He admitted that he fell on hard times and was even homeless for a period of time in 2021. He stated that even though he threatened to take appellee back to court, his finances would not allow him to do so. He testified that he registered the judgment from the Texas divorce decree and filed a contempt complaint because appellee was not abiding by the Texas court's order. He stated that he has been paying child support since the divorce, resulting in over $44,000 being paid to appellee for the benefit of the children. He said that he has never gone over a year without making the payments. Appellant stated that appellee's petition for single-parent adoption should be denied because he had "never been allowed to be their father" and that "every attempt that [he] made to be a part of their lives has been met with a wall."

On redirect, appellant admitted that he was never told by appellee that he would be arrested if he showed up to her residence. He also stated that he did not receive any warning from the local authorities to stay away from her property.

Appellee testified that she has lived in Fayetteville since February 2020. She stated that she wanted the circuit court to grant her petition because she had been the children's primary caregiver since birth. She said that she believed that the single-parent adoption was

4

in the children's best interest because "they have thrived, they have been stable, loved, very healthy, [and] happy" over the last four years. She also stated that they had made friends and were doing well in school due to the consistency she had been able to provide them with. She opined that it was in the children's best interest to maintain that consistency. She said that appellant last scheduled a visit with the children in May 2020 but did not show up. After that time, she stated that appellant's contact had been inconsistent and sporadic. She said that in 2021, appellant reached out only sixty-eight times to ask about the children. She stated that when her phone could no longer support the Duo app, she told appellant to just call the children, but he did not. Appellee testified that she has the facilities and resources to substantially provide for the nurture and care of the children. She submitted an affidavit of financial means that did not consider the child support she receives from appellant. She stated that she did not have any concerns about being able to financially care for the children and that she wished to establish a sole-parent relationship through the adoption. She said that the children are doing great in school and that they have great attendance. She stated that MB is in the gifted and talented program and that MG was awarded student of the month. She was able to introduce the children's report cards into evidence to support her contention that they are doing well in school.

Appellee opined that she does not need appellant's consent to adopt the children because he had gone a year or longer without significant contact with the children. She stated that she did not believe that appellant had a justifiable cause for the lack of contact. She said that it was not in the children's best interest to have a relationship with appellant

because "the last four years have shown that without him they have been successful, they have thrived, and they are, in [her] opinion, doing well in school. They are happy, they are healthy. They are maintaining relationships with friends and family members." She also stated that they are part of the community, the children do not lack for anything, and they are stable. She said that it is hard to feel that it is in the children's best interest to have a relationship with appellant "when you go long periods of time without reaching out to your children, two months, two weeks, two days, four months, just 68 times out of 365 days." She said that appellant sent only sixty-eight text messages to her in 2021. She testified that appellant told her to be prepared to go to court when she moved from Texas if he could not see the children every day, but he never filed anything. She said that she believed the visitation order needed to be modified since appellant no longer lived at the address listed in the decree, but that appellant never tried to get it changed. She stated that she was served with a contempt charge in December 2023. She said that appellant only asked that she be punished in the contempt petition, he did not ask for his visitation to be modified. She testified that from April 2019 to May 2020, appellant was entitled to thirty-four visits, but he canceled twenty-six of them and only took advantage of eight of them. She said that in the eight visits appellant attended, none went the full duration because they either ended early, or appellant showed up late.

Appellee testified that she began receiving child support from appellant in November 2019 once the withholding order went through. She stated that with the exception of Christmas 2019 where MB received some dinosaurs and MG received a baby doll, the

children had not received any cards or gifts from appellant. Appellee opined that appellant is not currently fit to care for the children because he did not do everything in his power to get his life together and see his children. She stated that there was no added benefit for appellant coming into the children's lives at this time "because he is a stranger to them." She said that the children do not even recognize that appellant is missing from their lives and that they do not ask about him because they do not know him. She said that appellant has been inconsistent and unreliable since their divorce. She testified that MG was two when she last saw appellant. She opined that she is morally fit to have custody and care of her children. She stated that she plays an active role in the children's sports, that they go places together, and they do things together regularly inside and outside the home. She said that she has been the children's sole parent for the last four years. Appellee stated that she enjoys being a hands-on parent because she wants to make sure that the children feel safe and supported, and she knows that she has done everything to make their childhood memorable and special. Again, she stated that it was in the children's best interest for her adoption petition to be granted. She testified,

> [T]hey've been with me their entire lives. I've maintained stability, love, care, support. I would do anything and everything for them. I think that it is too late for [appellant] to try to come back now and reintroduce himself as this stranger in their lives and it not alter their lives. If we leave here today and this is granted, their lives would not change. We would continue on the same path that we are on. They are not aware of the proceedings. They are happy and stable. If he's reintroduced into their lives, I feel like that will disrupt everything.

She stated that she did not believe that appellant's consent is necessary for her to solely adopt the children.

7

Appellee testified on cross-examination that at the time of the divorce, MG had just turned one and MB was almost four. She stated that after the divorce, appellant exercised his visitation in both Texas and Arkansas. She agreed that she did not respond to any of appellant's texts in the past year; however, she denied any similar action before that time. She said that appellant had last visited with the children in March 2020 at her home in Fayetteville. She stated that he requested other visits but subsequently canceled them. When asked why she had not sent appellant the photos she introduced into evidence, appellee responded, "Why would I send photos to a person who is a stranger to them[?]" She admitted that she asked the circuit court to waive the children's appearance because she did not think it would be appropriate to put "them in a situation they know nothing about and then [ask] them how they feel about it[.]" She testified that appellant's mother exercised visitation with the children a couple of time between 2020 and around 2023. She stated that she did not stop letting the children see their grandmother, but that she and the grandmother just had not spoken since around July 2023. Appellee stated that she was concerned about appellant's ability to provide stability and a safe environment for the children. She admitted that appellant now has a house and a job and agreed that appellant has the financial means to provide for the children. She denied creating the circumstances that led to appellant's being a stranger to the children. She stated that although appellant reached out sixty-eight times in 2021, there were 297 other days that he did not. She also said that according to the messages appellant provided, he did not reach out to her until April 2023 and that that contact was inconsistent until about August 2023. She said that because of this, she did not

"feel obligated to respond to somebody who can take that much time without reaching out to their children because, again, his is a stranger. And I would not share details about my children with a stranger." She said that she filed for single-parent adoption after being served with the contempt action because she felt that was her best option to ensure the children's safety. She admitted that the children have benefited from child-support payments since 2019. She testified that appellant robbed himself of time with the children that he cannot get back.

At the conclusion of the hearing, appellee asked the circuit court to find that appellant's consent is not needed for her to adopt the children and to grant her petition for single-parent adoption. Appellant asked the circuit court to find that appellant's consent is needed because there was a justifiable excuse for his lack of contact with the children. The circuit court found that appellant had gone at least twelve months without having contact with the children but also considered appellant's reason for the lack of contact. The circuit court ultimately found that appellant gave no justifiable cause for the lack of contact in 2022. The circuit court found that the single-parent adoption was in the children's best interest based on appellant's coming into the children's lives and damaging their stability. The adoption decree was filed on April 25, 2024. Appellant moved for reconsideration on May 1, contending that there was justifiable cause for his lack of contact with the children, the circuit court improperly put the burden on appellant to prove that the lack of contact was justifiable, his consent was needed for the adoption, and adoption was not in the children's best interest. Appellee filed a response on May 16 denying the material allegations of

9

appellant's motion and asking the circuit court to deny it. The circuit court denied appellant's motion in an order filed May 28. Appellant filed a timely notice of appeal on June 27.

Appellant argues for his first point on appeal that the circuit court's justifiable-cause finding was clearly erroneous because appellee interfered with appellant's ability to contact his children. We review adoption proceedings de novo, and a circuit court's decision will not be set aside unless it is clearly erroneous.[1]

Ordinarily, the consent of a natural parent is required in an adoption case.[2] However, this consent is not required "if the parent for a period of at least one (1) year has failed significantly without justifiable cause (i) to communicate with the child or (ii) to provide for the care and support of the child as required by law or judicial decree."[3] The one-year period may be any one-year period, not necessarily the one immediately preceding the filing of the adoption petition.[4] A significant failure is "one that is meaningful or important" and is "unjustifiable if it is voluntary and intentional, i.e., arbitrary and without adequate excuse."[5] The issue of justifiable cause is factual but one that is largely determined on the basis of the

[1]*In re Adoption of A.P.*, 2021 Ark. App. 440, 638 S.W.3d 293.

[2]Ark. Code Ann. § 9-9-206 (Repl. 2020).

[3]Ark. Code Ann. § 9-9-207(a)(2) (Repl. 2020).

[4]*Martini v. Price*, 2016 Ark. 472, 507 S.W.3d 486.

[5]*Gordon v. Draper*, 2013 Ark. App. 352, at 6, 428 S.W.3d 543, 546.

credibility of the witnesses.[6]  A person who wishes to adopt a child must prove by clear and convincing evidence that consent is unnecessary.[7]  Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established.[8]

Here, the circuit court heard evidence that appellant failed to contact his children for at least one year during a four-year period.  Appellant contended that he was unable to contact the children because of appellee's interference.  He submitted text messages from April 2023 to January 2024 showing that appellee had not responded to him.  He testified that this was a common theme with appellee but stated that he no longer had access to older texts.  Appellee testified that although appellant sent 68 texts in 2021, he did not start communicating consistently until after she filed for single-parent adoption.  She stated that she told appellant he could call the children, which he did not do.  She denied that she ever told appellant he could not see the children.  Appellant admitted he knew where appellee and the children lived but said he never tried to go visit because he did not want the police called.  He agreed that appellee had not told him he could not come to her home and that local authorities never warned him about staying away from appellee's residence.  Additionally, appellant stated that he warned appellee on several occasions that he was going

---

[6]*In re of Adoption of M.C.*, 2024 Ark. App. 579, 701 S.W.3d 61.

[7]*In re Adoption of J.N.*, 2018 Ark. App. 467, at 7, 560 S.W.3d 806, 812.

[8]*Posey v. Ark. Dep't of Health & Hum. Servs.*, 370 Ark. 500, 262 S.W.3d 159 (2007).

to have the case reopened and never did. He also threatened to show up at appellee's residence with the police to see the children but never did that, either. He testified that he waited to he was stable before reopening the case. Given these facts, we cannot say that the circuit court erred in finding no justification for appellant's failure to communicate with his children for at least a year.

Appellant also challenges the circuit court's best-interest finding. Before an adoption petition can be granted, the circuit court must find by clear and convincing evidence that the adoption is in the best interest of the child.[9] We review the evidence de novo.[10] This court will not reverse a circuit court's decision regarding the best interest of a child to be adopted unless it is clearly against the preponderance of the evidence, giving due regard to the opportunity and superior position of the circuit court to judge the credibility of the witnesses.[11] We give great weight to a circuit court's personal observations when the welfare of young children is involved.[12] The burden rests on the one seeking adoption to prove by clear and convincing evidence that adoption is in the child's best interest.[13] The ultimate

---

[9] *Newkirk v. Hankins*, 2016 Ark. App. 186, 486 S.W.3d 827.

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

determination of best interest is the primary objective of the circuit court in custody matters.[14]

Here, appellee testified that for the last four years, she had been the only parent the children have known. She stated that they were thriving and stable with her. She opined that allowing appellant to come into their lives at this point would disrupt the children's stability. Appellant argues that appellee made it difficult for him to have a relationship with his children. Appellant seems to argue that the circuit court did not consider all the evidence before finding that the adoption was in the children's best interest. The circuit court was in the best position to decide which party to believe. Despite appellant's contention, the court did not find that appellee was to blame for appellant's lack of contact with the children. This is supported by the circuit court's finding that appellant's consent was not needed for the adoption. The circuit court seems to have believed appellee when she testified that the children's lives would be disrupted if appellant, a stranger to them, was allowed back into it. Appellant essentially asks this court to reweigh the evidence in his favor. We have long held that we will not reweigh the evidence on appeal or second-guess the circuit court's credibility determinations.[15] We are satisfied that the circuit court's best-interest finding is supported by clear and convincing evidence.

---

[14]*Id.*

[15]*In re Adoption of E.R.*, 2020 Ark. App. 418.

13

For his third point, appellant argues that the circuit court improperly shifted the burden of proving a lack of justifiable cause to him, the party resisting the adoption. Appellee contends—and we agree—that appellant did not raise this argument until his motion for reconsideration. An argument raised for the first time in a motion for reconsideration is untimely and does not preserve an issue for appeal.[16] However, even if the issue was preserved, appellant has failed to show that the circuit improperly shifted the burden to him. If the petitioner meets the initial burden, then the nonconsenting parent must show some justifiable reason for the failure to contact.[17] The ultimate burden of proof remains with the petitioner—here, appellee—who must ultimately persuade the circuit court that appellant's reasons for a lack of contact are not legally justified.[18] This is exactly what was done in this case.

Finally, appellant argues that the circuit court abused its discretion by refusing to consider his motion for reconsideration. Appellant has failed to present any evidence to support this contention. In the order denying appellant's motion, the circuit court noted that it had "reviewed the motion, the response thereto, and all other relevant documents and filings." Just because the circuit court did not rule in appellant's favor does not mean

---

[16] *Plymate v. Martinelli*, 2013 Ark. 194.

[17] *French v. Hoelzeman*, 2020 Ark. App. 543, 614 S.W.3d 850.

[18] *Id.*

that it did not properly consider the motion.  This argument is nothing more than a request that we reweigh the evidence in appellant's favor, which we will not do.

Affirmed.

KLAPPENBACH, C.J., and HARRISON, J., agree.

*Rojas Smith Attorneys, PA*, by: *Joseph Paul Smith*; and *Niblock Law Firm, PLC*, by: *Raymond L. Niblock*, for appellant.

*Cullen & Co., PLLC*, by: *Tim Cullen*, for appellee.