Cite as 2026 Ark. App. 58

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-24-623

|  |  |
|---|---|
| VICTORIA MCBRIDE<br><br>APPELLANT<br><br>V.<br><br>ANDREW MCBRIDE<br><br>APPELLEE | **Opinion Delivered** February 4, 2026<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT<br>[NO. 04PR-22-1092]<br><br>HONORABLE JOHN R. SCOTT, JUDGE<br><br>AFFIRMED |

**N. MARK KLAPPENBACH, Chief Judge**

Victoria McBride appeals the 2024 order that denied her petition, as a single parent, to adopt her son. The circuit court found that she did not prove that it was in MC's best interest to permit the adoption. We affirm the circuit court's order.[1]

We review the evidence de novo. *In re Adoption of J.A.*, 2021 Ark. App. 136, 620 S.W.3d 190. We will not reverse a circuit court's decision regarding the best interest of a child to be adopted unless it is clearly against the preponderance of the evidence, giving due

---

[1]The "Statement of the Case" in an appellant's brief is required by Arkansas Supreme Court Rule 4-2(a)6 to "identify and discuss all material factual and procedural information" essential to understand and decide the issues on appeal. Here, appellant's "Statement of the Case" is a mere half page; it contains procedural dates but is woefully inadequate regarding the parties' testimony and other material evidence. Appellee's brief supplements the facts somewhat. In this instance, we will not require appellant to rebrief her appeal. We caution all attorneys, however, to be mindful of and compliant with the entirety of Rule 4-2 regarding the contents of electronic briefs.

regard to the opportunity and superior position of the circuit court to judge the credibility of the witnesses. *Id.* We give great weight to a circuit court's personal observations when the welfare of young children is involved. *Id.*

Arkansas Code Annotated section 9-9-204(3) (Repl. 2020) provides authority for an unmarried parent to adopt his or her child. Before an adoption petition can be granted, the court must determine that (1) the required consents have been obtained or excused, and (2) the petitioning party has proved by clear and convincing evidence that adoption is in the child's best interest. *Newkirk v. Hankins*, 2016 Ark. App. 186, 486 S.W.3d 827.

Victoria and Andrew McBride were married when their son was born in September 2020. They separated in July 2021 after which Andrew did not see or contact MC. Andrew had moved out of state around the time they separated. In their divorce decree, Victoria was awarded custody, and Andrew was permitted FaceTime visits that might lead to supervised visits. Andrew's parents sent checks to Victoria for Andrew's $251 monthly child-support obligation.

In October 2022, Victoria petitioned to adopt MC, contending that Andrew's consent to adoption was not required because Andrew failed to maintain contact with their son. Although Andrew admittedly had not stayed in contact, he resisted the petition to adopt. In December 2022, following involuntary admissions to mental health institutions, Andrew was diagnosed with paranoid schizophrenia and accepted treatment. MC was appointed an attorney ad litem.

In April 2024, the circuit court conducted a hearing on Victoria's petition to adopt then three-year-old MC.[2] Andrew had been working on his mental health, was taking medication, had recently moved out of his parents' home into an apartment in Colorado, had a dog, had been working part time for about a month, and was hoping to be permitted contact with his son. He attributed his failure to maintain contact on irrational fears about Victoria stemming from his mental illness. Andrew experienced hallucinations and was unable to hold down a full-time job, but his medications and therapy had significantly helped. He said he gave his parents money to send to Victoria for MC's benefit. He wanted a relationship with his son and was willing to adhere to any parameters set by the court. Andrew recognized that this was his last chance.

Victoria said their son is a bright, happy child and that she (a nurse) is providing a safe, stable life for MC. She said Andrew was a stranger to MC and that MC would suffer if Andrew was not able to maintain good mental health. She doubted his recent improvements would last. She had experienced Andrew's mental crises; he physically attacked her when they separated. Victoria worried about MC's safety, especially because MC was so young and could not understand the situation. She said Andrew was supposedly taking all his medications but still experienced breakthrough hallucinations. Victoria had allowed, and

_____

[2]The circuit court was also presiding over the parties' post divorce proceedings in which Andrew had a pending request to modify visitation. The circuit court announced its intent to simultaneously hear Andrew's request for visitation (domestic-relations case) and Victoria's petition to adopt MC (probate case). Victoria, Andrew, and MC's attorney had no objection to litigating both cases at the same time.

intended to continue to allow, access (phone calls, texts, pictures, and gifts) between MC and Andrew's parents ("Gogo" and "Grandpa"). She said, however, that a one-time in-person visit with Andrew's parents was confrontational and would be better conducted through a family therapist. The paternal grandparents did not testify at the hearing.

The attorney ad litem acknowledged that the facts of this case were difficult for everyone. She recommended that the adoption petition be denied because it was in MC's best interest to preserve the potential for MC to have a relationship with his father and to continue a relationship with his paternal grandparents. She emphasized that Andrew was not properly diagnosed until December 2022 and that he was benefiting from medical care and treatments. She also recognized that Andrew's visitation would necessarily be "severely limited" for MC's wellbeing. She advised against permanently severing the legal ties between MC and the paternal side of his family.

The circuit court denied Victoria's petition to adopt. The circuit court agreed with Victoria that Andrew's consent was not necessary because of his absence from MC's life since 2021. Nonetheless, the circuit court found, essentially, that the existing relationship between MC and his paternal grandparents and the potential of a relationship with his father was worth preserving.[3] The circuit court stated that there was no actual or threatened harm to MC. This appeal followed.

---

[3] In the domestic-relations case, the circuit court ordered that Andrew's communication and contact with MC be at Victoria's "sole discretion" and that Victoria "control and restrict any communication or contact" between them.

The dispositive issue in this appeal is whether the circuit court clearly erred in finding that, at this juncture, adoption was not in MC's best interest. The ultimate determination of best interest is the primary objective of the circuit court. *In re Adoption of Minor Child.*, 2025 Ark. App. 551, __ S.W.3d __. MC's attorney urged the court not to sever the existing and potential familial connections. The circuit court recognized the relationship between MC and his paternal grandparents. Victoria confirmed that the paternal grandparents had called, sent gifts, and ensured that child support was paid. The circuit court was impacted by Andrew's testimony that he was making sustained efforts to get his life and mental health on track and wanted to have a relationship with his son. We give great weight to a circuit court's personal observations when the welfare of young children is involved. *Id.* Victoria essentially asks us to reweigh the evidence in her favor. We will not reweigh the evidence on appeal or second-guess the circuit court's credibility determinations. We hold that the circuit court did not clearly err in finding that Victoria failed in her burden to prove that allowing her to adopt MC, and thereby sever all legal relationships with MC's paternal family, was in MC's best interest. We affirm.

Affirmed.

VIRDEN and MURPHY, JJ., agree.

*Rhoads & Armstrong, PLLC*, by: *Johnnie Emberton Rhoads*, for appellant.

*Dodds, Kidd & Ryan*, by: *Catherine A. Ryan*, for appellee.