Cite as 2026 Ark. App. 330

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CV-25-441

| | | |
|---|---|---|
| ANGELA DAVIDSON | | Opinion Delivered May 20, 2026 |
| | APPELLANT | |
| | | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, THIRTEENTH DIVISION [NO. 60PR-24-1827] |
| V. | | |
| MARLON HAYNES | | |
| | APPELLEE | HONORABLE MICHAEL REIF, JUDGE |
| | | AFFIRMED |

**STEPHANIE POTTER BARRETT, Judge**

Appellant, Angela Davidson ("Angela"), appeals the Pulaski County Circuit Court's order denying her petition for single parent adoption. Angela argues on appeal that the circuit court erred in (1) finding the consent of appellee Marlon Haynes ("Marlon") was required under Arkansas Code Annotated section 9-9-207(a)(2) (Repl. 2020); (2) finding that adoption was not in the best interest of the child; and (3) sustaining a hearsay objection at trial regarding whether the child knew Marlon is his father.[1] We affirm.

On August 13, 2024, Angela filed a petition to adopt her child, MC (DOB 10/21/17), as a single parent pursuant to Arkansas Code Annotated section 9-9-207(a)(2),

---

[1]Arkansas Code Annotated section 9-9-207 was amended effective August 5, 2025. The events at issue occurred before the amendment; therefore, the opinion analyzes the statute as it existed before that date.

alleging Marlon is the biological father of MC but had not been involved in MC's life for over two years, he had not seen or communicated with MC since May 2022, and adoption was in the best interest of MC.

On September 18, 2024, Marlon filed a response and a countermotion for visitation and custodial rights asserting that he is MC's biological father, he had paid child support throughout MC's life, and Angela had refused to allow visitation. Angela moved to dismiss the countermotion for lack of subject-matter jurisdiction, and the circuit court granted the motion and dismissed Marlon's countermotion.

A hearing on Angela's adoption petition was held on April 14, 2025.

Angela testified that MC was seven years old at the time of the hearing and that Marlon had never established parental rights. She further testified that Marlon had never called MC or asked MC to call him and had seen MC twenty-two times in seven years.

Angela testified that the parties entered into an extrajudicial agreement in 2018, effective for two years, under which Marlon could have visitation with MC any day reasonable for her. She also testified that from 2018 to May 2022, she placed no restrictions on visitation, Marlon had her contact information and knew where she lived, and Marlon went more than one year without seeing MC during that period. When asked whether MC knows Marlon is his father, Marlon objected on hearsay grounds, and the circuit court sustained the objection.

Angela testified that beginning in December 2022, she imposed the requirement that Marlon had to participate in counseling with MC before visitation would occur. She

explained that this requirement was her own decision. She stated that Marlon had not seen MC since May 2022, and they did not have a father-son relationship. She also stated that Marlon requested to see MC only four times in the last three years. She acknowledged that Marlon paid her $750 a month in child support beginning in 2018 and missed only one payment in seven years.

Angela testified that the parties became involved in a business dispute in 2022 regarding a travel trailer, which led to litigation in the Pulaski County Circuit Court.[2] During questioning about the travel trailer, Angela objected on relevance grounds, and the circuit court overruled the objection.

Angela further testified that she and her four children lived in a travel trailer for approximately two and half years through the COVID-19 pandemic and that they stayed at various locations, including on the property of Marlon's gym.

The circuit court questioned Angela regarding the timing of visits between Marlon and MC and the specifics about the travel trailer and her stay at the gym. Angela testified that Marlon saw MC four to five times in 2018 and seven times between 2019 and 2020. She further stated that from November 2021 to May 2022, she was at the gym daily and that Marlon saw MC during that time. She described the visits as brief, and most occurred in

---

[2]The record reflects that parties refer to the property as a "camper," "trailer," and "travel trailer" throughout the proceeding. For purposes of consistency, it shall be referred to as a "travel trailer" throughout this opinion.

passing at the gym. She testified that MC does not know Marlon as his father, and he called Marlon by the name of "Jim" because he would see Marlon at the gym.

When asked why she imposed the counseling restriction, Angela explained that Marlon had a consistent pattern of coming around during the holidays and wanting to bring MC gifts and that counseling would be the best for MC because he does not know Marlon. Angela further testified that Marlon requested visitation with MC only after she filed the adoption petition.

Marlon testified that when Angela was living in a house, he had regular visitation with MC, and visitation decreased when she moved into the travel trailer and began living in different places. While Angela was living in the travel trailer, there was a period when she went to California for three to four months. He also stated that he provided financial support, including child support through CashApp.[3] He stated that he would send Angela $500 for MC's birthday and give her money for Mother's Day as well as help pay for medical expenses.

Marlon testified that in November 2021, he knew Angela was having financial problems and offered to give her money to fix the travel trailer. He further testified that he said he would buy the travel trailer and pay her $1,000 a month until the travel trailer was

---

[3]At trial, a screenshot of the total amount of transactions between Angela and Marlon was introduced and admitted into evidence. The screenshot shows that Marlon had paid Angela $64,386. The screenshot did not provide all the itemized transactions between the parties. There was some argument that some of those funds were for business-related activity, not child support. However, it is not disputed that Marlon paid child support to Angela.

fixed, then they would sell it and split the proceeds. In May 2022, Angela told him that the travel trailer would not sell for a profit. He stated that he put approximately $20,000 into fixing the travel trailer. He further stated that Angela would not return the travel trailer when he requested it back. Marlon introduced into evidence a text-message exchange between the parties about the dispute involving the travel trailer. Angela objected to the admission of the exhibit into evidence on the basis of relevance, and the circuit court overruled the objection.

Marlon testified that after the travel trailer dispute arose, Angela told him not to communicate with her in any way except through the court or her attorney. He further testified that he asked to see MC more than once after she told him that he could not see MC without counseling. He also stated that he asked to see MC in December 2023, and Angela responded that nothing had changed since last Christmas. Marlon introduced additional text messages between the parties that showed requests he made to Angela regarding visitation, Angela directing Marlon to communicate through her attorney, Angela threatening to block his number for harassment, and disputes about the travel trailer. The messages were admitted into evidence.

Marlon stated he saw MC as much as he could from 2018 to May 2022. He also testified that during the COVID-19 pandemic in 2020, he did not see MC because he was unvaccinated, and he didn't want to risk MC getting COVID-19. He stated he never agreed to see MC through counseling. He testified that he saw MC more than twenty-two times in the last seven years. From November 2021 to May 2022, he saw MC two to three times a

5

week because he would be at the gym. Marlon acknowledged that MC did not recognize him as his father.

The circuit court entered an order on May 19, 2025, denying Angela's petition for adoption. The circuit court found that Angela had not met her burden of proving by clear and convincing evidence that Marlon's consent to the adoption was not required.

The circuit court found that Marlon exercised visitation during MC's early years until 2020, when the COVID-19 pandemic began. MC was unvaccinated, and Marlon was concerned about exposure. Around that time, Angela and her children began living in a travel trailer that was moved between locations, and Angela took an extended trip to California.

The circuit court further found that Marlon saw MC casually but regularly from November 2021 through May 2022, during which time Angela was renovating a travel trailer on property owned by him. During that time, MC did not recognize Marlon as his father. The circuit court also found suspect Angela's insistence on counseling as a condition of continued visitation in light of the parties' ongoing business dispute. Although Marlon did not communicate with MC for at least one year, he contacted Angela multiple times to arrange visitation.

The circuit court found Marlon's failure to communicate with MC was not without justifiable cause because of the "roadblock" placed on his visitation by Angela. The circuit court further found that Angela failed to prove that the adoption was in MC's best interest.

Adoption proceedings are reviewed de novo, and a circuit court's decision will not be disturbed unless clearly erroneous, giving due regard to the opportunity and superior position of that court to determine the credibility of the witnesses. *Forrest v. Fleming*, 2024 Ark. App. 104, at 8, 685 S.W.3d 270, 276. A finding is clearly erroneous when, despite evidence to support it, the reviewing court is left with the firm conviction that a mistake has been committed. *Id.*

Arkansas Code Annotated section 9-9-204(3) (Repl. 2020) authorizes an unmarried parent to adopt his or her child. Before an adoption petition can be granted, the court must determine that (1) the required consents have been obtained or excused, and (2) the petitioning party has proved by clear and convincing evidence that adoption is in the child's best interest. *McBride v. McBride*, 2026 Ark. App. 58, at 2, 730 S.W.3d 537, 539 (citing *Newkirk v. Hankins*, 2016 Ark. App. 186, 486 S.W.3d 827).

Angela challenges the circuit court's finding that Marlon's consent to the adoption was required under Arkansas Code Annotated section 9-9-207(a)(2).

Section 9-9-207(a)(2) provides that consent to adoption is not required of "a parent of a child in the custody of another, if the parent for a period of at least one (1) year has failed significantly without justifiable cause (i) to communicate with the child or (ii) to provide for the care and support of the child as required by law or judicial decree." The one-year period may be any one-year period, not necessarily the one immediately preceding the filing of the adoption petition. *In re Adoption of Minor Child.*, 2025 Ark. App. 116, at 7, 708 S.W.3d 784, 789.

There is no dispute that Marlon paid child support consistently throughout MC's life. Thus, the only issue before this court is whether Marlon had failed significantly to communicate with MC for a one-year period without justifiable cause.

Angela specifically argues that Marlon's failure to communicate with MC in 2020 was not justified by the COVID-19 pandemic. Angela, however, failed to meet her burden. Although Marlon attributed his lack of contact with MC in 2020 to COVID-19 and MC's unvaccinated status, Angela did not establish when those circumstances began, how long they lasted, or whether they spanned the required one-year period.

Nor did the testimony that Marlon saw MC seven times between 2019 and 2020 establish when those visits occurred or whether Angela otherwise proved a qualifying one year of significant failure to communicate. As this court recognized in *Ray v. Sellers*, 82 Ark. App. 530, 120 S.W.3d 134 (2003), the petitioner must establish a one-year period, and the failure to do so requires denial of the petition.

Here, without evidence establishing the duration of the alleged period in 2020 during the COVID-19 pandemic, Angela did not prove a one-year period of significant failure to communicate without justifiable cause during that time.

Angela alternatively argues that Marlon failed to significantly communicate with MC before and after 2020. The circuit court, however, found Marlon exercised visitation with MC during his early years until the COVID-19 pandemic began in 2020 and saw MC casually but regularly from November 2021 through May 2022 when Angela was renovating a travel trailer on Marlon's property. Although Angela characterized Marlon's contact with MC as

8

limited, the circuit court was free to credit Marlon's testimony regarding the frequency and nature of the contact. *See McBride*, 2026 Ark. App. 58, at 1–2. Those findings support the circuit court's conclusion that Marlon did not significantly fail to communicate with MC during those periods, and we defer to the circuit court's superior position to observe the parties and to judge the credibility of witnesses. *Id.*

Angela further asserts that Marlon did not validly or significantly attempt to see MC after December 2022. It is undisputed that Marlon had not seen MC since that time. Therefore, the relevant inquiry is whether Marlon's failure to communicate was without justifiable cause.

Once the petitioner establishes a significant failure, the nonconsenting parent must show some justifiable reason for the failures; the ultimate burden of proof, however, remains with the petitioner. *See French v. Hoelzeman*, 2020 Ark. App. 543, at 2, 614 S.W.3d 850, 852 (citing *Holloway v. Carter*, 2019 Ark. App. 330, at 3, 579 S.W.3d 188, 190). When faced with having to decide whether a parent has presented justifiable cause, courts must assess and weigh the parent's reasons why he or she failed to communicate with or support the children. *Id.* at 2–3.

The issue of justifiable cause is viewed as factual, but one that is determined largely on the basis of the credibility of the witnesses, and we give great weight to a circuit court's personal observations when the welfare of young children is involved. *Rodgers v. Rodgers*, 2017 Ark. 182, at 4–5, 519 S.W.3d 324, 327 (citing *In re Adoption of K.F.H. & K.F.H.*, 311 Ark. 416, 423, 844 S.W.2d 343, 347 (2003)). Without justifiable cause means the significant

9

failure must be willful in the sense of being voluntary and intentional; it must appear the parent acted arbitrarily and without just cause or adequate excuse. *In re Adoption of J.N.*, 2018 Ark. App. 467, at 8, 560 S.W.3d 806, 812 (citing *Courtney v. Ward*, 2012 Ark. App. 148, 391 S.W.3d 686).

Here, Angela placed restrictions on Marlon's visitation with MC beginning in December 2022, requiring that visitation be facilitated through a counselor, a condition she imposed herself and during an ongoing business dispute between the parties. The record reflects that these restrictions constrained Marlon's ability to communicate with MC. Marlon attempted to contact Angela via text message and was denied visits with MC, and Angela directed him to communicate through the court or her attorney and threatened to block him if he continued to contact her.

Marlon's lack of communication was not voluntary, willful, or arbitrary but was the result of Angela's actions in preventing contact. *See In re Adoption of MC*, 2024 Ark. App. 579, at 8–9, 701 S.W.3d 61, 66 (citing *Bemis v. Hare*, 19 Ark. App. 198, 718 S.W.2d 481 (1986); *Roberts v. Swim*, 268 Ark. 917, 597 S.W.2d 840 (Ark. App. 1980)). Therefore, the circuit court did not err in finding that Marlon's consent to MC's adoption was required, and we affirm.

Angela next argues that the circuit court abused its discretion by admitting evidence related to the parties' business dealings. Arkansas Rule of Evidence 402 provides, "All relevant evidence is admissible, except as otherwise provided by statute or by these rules or by other rules applicable in the courts of this State. Evidence which is not relevant is not

admissible." Evidence is relevant if it has a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *Peterrie Transp. Servs., Inc. v. Thurmond*, 79 Ark. App. 375, 380, 90 S.W.3d 1, 4 (2002) (citing *Loy v. State*, 310 Ark. 33, 832 S.W.2d 499 (1992)).

It is within the sound discretion of the circuit court to determine what evidence is relevant and what is prejudicial, and the appellate court will not reverse the circuit court's decision regarding relevancy absent an abuse of discretion. *Id.* (citing *Travelers Ins. Co. v. Smith*, 338 Ark. 81, 991 S.W.2d 591 (1999)). Nor will this court reverse a circuit court's evidentiary ruling without a demonstration of prejudice. *See Schmidt v. Stearman*, 98 Ark. App. 167, 179, 253 S.W.3d 35, 45 (2007) (citing *Baker Refrigeration Sys., Inc. v. Weiss*, 360 Ark. 388, 201 S.W.3d 900 (2005)).

Here, Angela was not prejudiced by the circuit court's ruling. The circuit court admitted evidence regarding the parties' business dealings over Angela's objection. That evidence provided context for the breakdown in communication and Angela's decision to condition visitation. Because justifiable cause may turn on whether communication efforts were thwarted, the evidence was relevant. Accordingly, the circuit court did not abuse its discretion.

Angela next challenges the circuit court's best-interest finding, and we affirm. This court reviews the evidence de novo and we will not reverse a circuit court's decision regarding the best interest of a child to be adopted unless it is clearly against the preponderance of the evidence, giving due regard to the opportunity and superior position of the circuit court to

11

judge the credibility of the witnesses. *See Kohler v. Croney*, 2020 Ark. App. 289, at 6, 602 S.W.3d 123, 127. This court gives great weight to a circuit court's personal observations when the welfare of young children is involved. *See id.* The burden rests on the one seeking adoption to prove by clear and convincing evidence that adoption is in the child's best interest. *Id.* The ultimate determination of best interest is the primary objective of the circuit court in custody matters. *Id.*

Angela contends that adoption is in MC's best interest because he has never had a father-son relationship with Marlon, has resided exclusively with her since birth, has never been alone with Marlon, and is excelling in the first grade. She further asserts that MC is thriving due to a strong support system that includes his siblings, his extended family, and her ex-husband.

The circuit court, however, considered that Marlon has contributed financially to MC's upbringing, is stable and law abiding, has consistently acknowledged paternity, and has other children who are MC's half siblings. The circuit court also considered that Marlon showed a sincere interest in establishing a father-son relationship with MC, and MC is entitled to know and bond with his father.

On this record, Angela failed to prove by clear and convincing evidence that adoption is in MC's best interest. Although Angela presented evidence of MC's current environment, the circuit court was not required to conclude that adoption was necessary to maintain that stability. Angela essentially asks this court to reweigh the evidence in her favor, but this court will not reweigh the evidence on appeal or second-guess the circuit court's credibility

determinations. *See McBride*, 2026 Ark. App. 58, at 5. The circuit court did not err in finding that Angela failed to meet her burden to prove that adoption was in MC's best interest.

Last, Angela argues that the circuit court abused its discretion in sustaining Marlon's hearsay objection to her testimony regarding whether MC knows Marlon is his father.

This court reviews a circuit court's evidentiary rulings under an abuse-of-discretion standard, and we will not reverse absent a demonstration of prejudice. *See Tadlock v. Ark. Dep't of Hum. Servs.*, 2009 Ark. App. 821, at 6, 373 S.W.3d 361, 365; *Watson v. Ark. Dep't of Hum. Servs.*, 2026 Ark. App. 14, at 15. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Ark. R. Evid. 801(c). Hearsay is generally inadmissible. *See* Ark. R. Evid. 802.

Here, the circuit court did not err in sustaining the objection on hearsay grounds. Angela was asked whether MC knows Marlon is his father, which sought to elicit testimony regarding MC's out-of-court statements to prove the truth of the matter asserted. *See* Ark. R. Evid. 801. The circuit court therefore acted within its discretion in preventing the introduction of inadmissible hearsay testimony. Moreover, the exclusion of evidence is not prejudicial if the same evidence was introduced through another source and was before the trier of fact for its consideration. *Joslin v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 273, at 9, 577 S.W.3d 26, 31 (citing *Howard v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 68, 512 S.W.3d 676). Testimony regarding MC's knowledge of Marlon's identity as his father was otherwise introduced at trial. Accordingly, Angela cannot demonstrate prejudice from the exclusion of the testimony, and we affirm.

Affirmed.

HARRISON and HIXSON, JJ., agree.

*Lion Legal Services*, by: *Kathryn Loyd Wilson*, for appellant.

*The Brad Hendricks Law Firm*, by: *Lloyd W. Kitchens*, for appellee.